HAAS, Appellant,

v.

BAUER, Appellee.

[Cite as *Haas v. Bauer,* 156 Ohio App.3d 26, 2004-Ohio-437.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 02CA008198.

Decided Feb. 4, 2004.

28

Kathleen M. Haas, for appellant.

James P. Reddy Jr., for appellee.

WHITMORE, Judge.

{¶ 1} Defendant-appellant Kathleen M. Haas, acting pro se, has appealed from a judgment of the Lorain County Court of Common Pleas, Domestic Relations

Division, that adopted a settlement agreement and shared parenting plan, which was incorporated into the divorce decree, and denied her Civ.R. 60(B) motion. This court affirms.

I

{¶ 2} Appellant Kathleen M. Haas ("Mother") and Appellee Mark H. Bauer ("Father") were married in Summit County, Ohio, on June 20, 1990. Two children were born as issue of the marriage, to wit, Madeline and Cecily. Father filed for divorce on November 17, 2000. At the same time, Father also filed a motion for temporary orders, wherein he requested, among other things, that the trial court designate him as the residential parent, determine child support and uninsured health expenses for the minor children, and restrain each party from committing certain acts. Mother responded by filing an answer and a motion for temporary orders, wherein she also requested, among other things, that the trial court designate her as the residential parent and legal custodian of the minor children. A hearing was held on December 20, 2000, and the parties agreed that Father would have possession of the minor children during Christmas and New Year's break; at all other times, the children would remain with Mother.

{¶ 3} On May 30, 2001, Mother presented a shared parenting plan to Father and on November 28, 2001, Mother filed a motion to continue the trial date and a motion to appoint a custody investigator, wherein she requested that the trial court appoint an independent custody evaluator to investigate the matter and make recommendations to the trial court as to what type of custodial plan would be in the best interest of the minor children. The trial court denied the motion to appoint a custody investigator, but it granted the motion to continue the trial date.

{¶ 4} On December 6, 2001, Father filed a motion for shared parenting, with an attached shared parenting plan, and Mother filed the same motion, with attached plan, on February 12, 2002. Father filed a motion to modify temporary orders on March 21, 2002. Father requested the trial court to modify the prior orders regarding payment of child support, in the amount of $900 per month, plus 2 percent processing fee, and spousal support, in the amount of $500 per month, plus 2 percent processing fee.

{¶ 5} On May 23, 2002, the parties entered into two agreements: a settlement agreement, which disposed of all the marital property; and a shared parenting plan, which addressed the allocation of parental rights. As a result of the agreements, an uncontested divorce was scheduled for June 4, 2002. On the day of trial, Mother repudiated the agreements. Later, on June 6, 2002, Father filed a supplemental motion for shared parenting and an emergency motion to modify temporary support. Attached to the supplemental motion for shared parenting

was an affidavit in which Father swore that "after extensive negotiation with counsel, [Father] and [Mother], executed a Shared Parenting Plan which is in the best interest of the parties' minor children." Father further requested the trial court to adopt the terms of the shared parenting plan as its parenting order. The magistrate construed Father's emergency motion to modify support as a request that the magistrate adopt and enforce the shared parenting plan that was previously executed by the parties. The magistrate denied the emergency motion to modify support.

{¶ 6} Father filed a motion to enforce the settlement agreement and shared parenting plan upon which both parties had previously agreed. The trial court ruled on Father's motion on August 23, 2002. The trial court found that the parties attempted to enter into a settlement agreement and shared parenting plan on May 7, 2003, but Mother declined to sign the proposed agreements because "on that date based upon her desire, as she had expressed to the other participants at the meeting, that the settlement be all inclusive, indicating that before she would sign the shared parenting plan she wanted a global settlement of all issues, including financial basis." The trial court further found that on May 23, 2002, the parties met for a second time and that at the conclusion of that meeting the parties and their respective counsel signed both agreements and that "at the conclusion of the meeting, [the parties] contacted the Court and secured a hearing on the Court's 'Uncontested Docket[,]' based upon the belief that the case had been settled by the parties." Further, "[o]n June 4, 2002, [Mother] formally rescinded the May 23, 2002 Agreement[s]. * * * Within the formal rescission, [Mother] alleged that she had entered into the agreement under duress. She did not articulate in this document the nature of the duress. She acknowledged that the agreement existed. She provided further that 'it [the agreement] stands as a consequence to legal advice and a series of legal events have occurred over time.'" (Alterations sic.)

{¶ 7} Based upon the evidence before the trial court, it further found that "the testimony of [Mother] lack[ed] credibility, and that the balance of the evidence support[ed] a finding that the written agreements were signed by her with her knowledge and assent to the terms of each agreement, and without duress or undue influence being exerted upon her." The trial court concluded that the executed documents were valid contracts and that Mother's signature was not procured through fraud or duress. Thus the settlement agreement and shared parenting plan entered into by Mother and Father on May 23, 2002, "consti-tute[d] binding contracts dividing their property, allocating parental rights and responsibilities concerning the minor children, and addressing support obli-gations." Father's motion to enforce the settlement agreement and shared parenting plan was granted.

{¶ 8} Mother filed a pro se motion to vacate the trial court's August 23, 2002 order granting Father's motion to enforce the settlement agreement and shared parenting agreement. Mother argued that the agreements were, among other things, not in the best interest of the children and that "[i]mplementing the proposed agreement[s] would have drastic implications on [Mother's] ability to maintain household stability." The trial court denied Mother's motion.

{¶ 9} On October 17, 2002, Father filed a motion for attorney fees, wherein he requested the trial court to order Mother to reimburse him for the attorney fees and costs incurred in defense of her post-trial motions. In a judgment entry dated October 23, 2002, the trial court stated that "[i]n order to afford [Mother] an opportunity to prepare for [Father's motion for attorney fees], the same shall be considered at a later date." The trial court further ordered "that [Father's] Motion for Attorney's Fees be set by [Father] for hearing and that [Father] provide notice to [Mother] of the hearing." Father never scheduled a hearing as ordered by the trial court; thus, Father abandoned the issue of attorney fees.

{¶ 10} On October 23, 2002, the trial court granted a divorce to Father and Mother and incorporated the terms of the settlement agreement and shared parenting plan into the order. Both parties were designated the residential parent and the legal custodian of the minor children. The trial court further ordered Father to pay (1) Mother child support in the amount of $900 per month, plus 2 percent processing fee; (2) spousal support in the amount of $500 per month, plus 2 percent processing fee until September 23, 2003; and (3) the first $100 per child per year for any unreimbursed or uncovered reasonable medical, dental, orthodontic, optical, drug, and psychological expenses.

{¶ 11} Mother filed a motion for findings of facts and conclusions of law. The motion was denied.

{¶ 12} On November 22, 2002, Mother filed a notice of appeal, wherein she appealed from the trial court's October 23, 2002 judgment.[1] After filing the notice, Mother filed several pro se post-decree motions: (1) a motion to vacate the final order of the trial court's October 23, 2002 judgment; (2) a motion to stay the trial court's August 23, 2002 judgment, which granted Father's motion to enforce the shared parenting agreement; (3) a motion for the concerns of the children to be heard, wherein Mother requested that the trial court conduct a "private conversation" with the children; (4) a motion to compel discovery and attorney fees; and (5) a "motion for evidentiary hearing and oral hearing on [Mother's Civ.R. 60(B) ] motion[,]" wherein Mother requested a hearing on her November 22, 2002 motion to vacate.

---

1. Although Mother filed a notice of appeal on November 22, 2002, the record indicates that the notice was not transmitted to this court until December 3, 2002.

{¶ 13} Mother filed a motion to stay the appellate proceedings with this court and requested that this court remand the matter to the trial court in order that the trial court could rule on her Civ.R. 60(B) motion. This court granted Mother's motion and remanded the matter to the trial court. Upon remand, the trial court denied Mother's Civ.R. 60(B) motion, motion to compel discovery and attorney fees, motion for the concerns of the children to be heard, motion for evidentiary hearing and oral hearing on her Civ.R. 60(B) motion, and motion for stay of the trial court's August 23, 2002 judgment. The matter is now before this court.

{¶ 14} Mother has asserted nine assignments of error, some of which we have rearranged and consolidated to facilitate review.

## II

### Assignment of Error Number One

"The court committed reversible error in applying the laws of general contract to find that the parties entered into a parol agreement pursuant to a divorce action."

### Assignment of Error Number Two

"The court abused its discretion in admitting [Father's] motion to enforce."

### Assignment of Error Number Three

"Based upon insufficiency of evidence, the court committed reversible error and abused its discretion in finding a valid contract existed."

### Assignment of Error Number Four

"Based upon insufficiency of evidence, the court abused its discretion when finding the alleged agreement was entered upon voluntarily by the parties."

### Assignment of Error Number Five

"Based upon insufficiency of evidence and an erroneous review, the court committed reversible error in holding that the alleged agreement constituted a complete agreement between the parties pursuant to a divorce action."

### Assignment of Error Number Six

"The court committed reversible error in finding the alleged agreement disposed of all issues pursuant to a divorce action."

Assignment of Error Number Seven

"Due to irregularities in the proceedings and insufficiency of evidence, the court abused its discretion when enforcing the contract upon the parties pursuant to an uncontested divorce action."

{¶ 15} In Mother's first, second, third, fourth, fifth, sixth, and seventh assignments of error, she has essentially argued that the trial court abused its discretion when it concluded that the settlement agreement and shared parenting plan constituted valid, enforceable contracts to which all parties were bound. Specifically, Mother has argued that because the agreements were not valid and enforceable, the trial court erred in granting Father's motion to enforce. This court disagrees.

{¶ 16} Absent fraud, duress, overreaching, or undue influence, a settlement agreement entered into by parties in a divorce is enforceable. *DiGuilio v. DiGuilio*, 8th Dist. No. 81860, 2003-Ohio-2197, 2003 WL 1995607, at ¶ 33. This court has also previously held that a settlement agreement is a contract between two parties and that therefore its validity is governed by the general rules of governing contracts. *Emerine v. Emerine* (Oct. 25, 1989), 9th Dist. No. 89CA004571, 1989 WL 126303, at 2; see, also, *Zamonski v. Wan*, 2d Dist. No. 19392, 2003-Ohio-780, 2003 WL 366756, at ¶ 6 (holding that "[a] separation agreement is a contract, and theories of contract law govern its validity"); *Ellyson v. Ellyson* (June 11, 1993), 7th Dist. No. 92 C 32, 1993 WL 205022. Therefore, as in any other contract, a settlement agreement is enforceable only if the parties intend to contract on its essential terms, including its subject matter, and intend to be bound by its terms. Id. Settlement agreements "may be either written or oral, and may be entered into prior to or at the time of a divorce hearing. Where the agreement is made out of the presence of the court, the court may properly sign a journal entry reflecting the settlement agreement in the absence of any factual dispute concerning the agreement." (Citations omitted.) *Muckleroy v. Muckleroy* (Sept. 5, 1990), 9th Dist. No. 14443, at 3–4, 1990 WL 129242. Furthermore, " 'when the parties agree to a settlement offer, [the] agreement cannot be repudiated by either party, and the court has the authority to sign a journal entry reflecting the agreement and to enforce the settlement.' " (Alterations sic.) *Shetler v. Shetler* (May 23, 2001), 9th Dist. No. 00CA0070, at 3–4, 2001 WL 542318, quoting *Klever v. Stow* (1983), 13 Ohio App.3d 1, 4, 13 OBR 1, 468 N.E.2d 58; see, also, *DiGuilio*, 2003-Ohio-2197, at ¶ 33.

{¶ 17} The facts in *Ellyson* are similar to the facts of the instant case. The wife in *Ellyson* filed a complaint for divorce against the husband. The main issue in the divorce was the allocation of parental rights and responsibilities of the parties' minor child. During a pretrial hearing, the parties' attorneys read a separation agreement into the record, which the parties asked the court to adopt

as part of its judgment entry and divorce decree. The court determined that such an agreement was fair and equitable. The wife's attorney then prepared a judgment entry, signed it, and forwarded it to the husband's attorney, and that entry was signed by husband's counsel. The trial court approved the judgment entry, and the entry was later filed.

{¶ 18} After the judgment entry was filed, the wife retained new counsel; wife's new attorney filed a motion for pretrial hearing, indicating that the parties had not reached an agreement regarding allocation of parental rights. Before another pretrial hearing was held, the trial court journalized the judgment entry that was previously signed by both parties and that embodied the terms of the oral separation agreement. The wife filed a motion for relief from judgment pursuant to Civ.R. 60(B), and the motion was overruled. On appeal, the wife argued that before the agreement was journalized she had changed her mind and repudiated it. She further argued, as does Mother in the instant matter, that the separation agreement was contractual and executory until journalization. Relying on *Spercel v. Sterling Industries* (1972), 31 Ohio St.2d 36, 60 O.O.2d 20, 285 N.E.2d 324, the appellate court rejected the wife's arguments. The appellate court concluded that the separation agreement constituted a binding agreement and that it appeared as if the wife simply changed her mind after entering into the binding agreement in open court. *Ellyson,* 1993 WL 205022. Quoting *Spercel,* the *Ellyson* court noted that "[t]o permit a party to unilaterally repudiate a settlement agreement would render the entire settlement proceedings a nullity, even though, as we have already determined, the agreement is of binding force." *Ellyson,* 1993 WL 205022, quoting *Spercel,* 31 Ohio St.2d at 40, 60 O.O.2d 20, 285 N.E.2d 324.

{¶ 19} Here, the record is devoid of any evidence that Mother's signature on the settlement agreement was procured through fraud, undue influence, duress, or coercion. The trial court specifically found that Mother signed the settlement agreement, with her attorney at her side, and that she acknowledged that an agreement existed. The record indicates that Mother voluntarily signed the agreement, without any hint of duress or undue influence, and that she simply changed her mind. A change of heart or poor legal advice is not grounds to set aside a shared parenting agreement. See *Zamonski,* 2003-Ohio-780, at ¶ 6, citing *Walther v. Walther* (1995), 102 Ohio App.3d 378, 383, 657 N.E.2d 332. "It has long been the rule in Ohio that if the parties voluntarily enter into a separation agreement, the agreement becomes a valid and binding contract between the parties." *Russell v. Russell* (June 7, 1999), 5th Dist. No. 98–CA–0127, 1999 WL 437003, citing *Tullis v. Tullis* (1941), 138 Ohio St. 187, 20 O.O. 237, 34 N.E.2d 212, overruled on other grounds sub nom. *Peters v. Peters* (1968), 14 Ohio St.2d 268, 43 O.O.2d 441, 237 N.E.2d 902. We find, therefore, as

did the appellate court in *Ellyson,* that the settlement agreement, which was signed by all parties, was binding upon both Mother and Father.

{¶ 20} With respect to the shared parenting plan, this court notes that a trial court's judgment "in custody matters enjoys a presumption of correctness." *Butler v. Butler* (1995), 107 Ohio App.3d 633, 638, 669 N.E.2d 291. Thus, it is within the sound discretion of the trial court to adopt a shared parenting plan. R.C. 3109.04(D)(1)(b); *Masters v. Masters* (1994), 69 Ohio St.3d 83, 85, 630 N.E.2d 665; *Madden v. Madden* (Oct. 30, 1997), 8th Dist. No. 71302, 1997 WL 675449. Thus, the standard of review this court must apply in reviewing the trial court's decision to adopt a shared parenting plan is an abuse of discretion. *Saylor v. Hessling* (Aug. 5, 1996), 12th Dist No. CA95–12–223, 1996 WL 435365. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 21} Although this court has previously held that a shared parenting plan is a contract once it is adopted by the trial court, see *Harbottle v. Harbottle,* 9th Dist. No. 20897, 2002-Ohio-4859, 2002 WL 31060237, at ¶ 43, this court does not need to apply contract law in order to determine whether the trial court abused its discretion when it accepted the shared parenting plan presented by Father. Pursuant to R.C. 3109.04(D)(1)(a)(i) through (iii), when either parent or both parents file a motion to adopt a shared parenting plan, accompanied by a proposed plan, it is within the trial court's discretion to accept the shared parenting plan, so long as the trial court finds that the shared parenting plan is in the best interest of the children. Therefore, even if we accept Mother's argument that she did not voluntarily sign the shared parenting plan or that her signature was procured through fraud, this court finds that the trial court could properly reviewed the plan once it was submitted by Father.[2] The trial court needed to consider only the best interest of the children when it reviewed the proposed plan; it was irrelevant whether Mother agreed to the terms of the

---

2. This court notes that Mother initially requested shared parenting when she filed a motion for shared parenting, with an attached plan, on February 12, 2002. Although she now disputes the validity of the May 23, 2002 shared parenting agreement submitted by Father, and to which she initially agreed, she failed to withdraw her request for shared parenting. Moreover, Mother never requested sole custody of the children. Because both parents requested shared parenting, this case does not present a situation where the trial court imposed shared parenting on an unconsenting party. See *Torch v. Torch* (June 19, 1996), 5th Dist. No. 95AP060041, 1996 WL 363429 (holding that trial court is not given the authority to force shared parenting when none has been requested); *Schmidli v. Schmidli,* 7th Dist. No. 02 BE 63, 2003-Ohio-3274, 2003 WL 21443742, at ¶ 28 (holding that R.C. 3109.04 does not permit the trial court to create sua sponte a shared parenting plan when neither party requests shared parenting).

shared parenting plan or whether the shared parenting plan was a valid "contract" at the time it was submitted to the trial court.

{¶ 22} In determining whether shared parenting is in the best interest of the children, R.C. 3109.04(F)(2) provides that the trial court shall consider all relevant factors, including the factors enumerated in R.C. 3109.04(F)(1), R.C. 3119.23, and the five factors set forth in R.C. 3109.04(F)(2). The trial court specifically found that the shared parenting plan was in the "best interest of the children" pursuant to R.C. 3109.04(D)(1)(a) and (F)(2). Although it is not necessary for the trial court to set forth its analysis as to each factor listed in R.C. 3109.04(F)(2), see *Bunten v. Bunten* (1998), 126 Ohio App.3d 443, 447, 710 N.E.2d 757, a trial court is required to find that it considered the best interests of the children. "The purpose of a far-reaching inquiry is to allow the judge to make a fully informed decision on an issue as important as which parent will raise the child." *Pater v. Pater* (1992), 63 Ohio St.3d 393, 396, 588 N.E.2d 794.

{¶ 23} In sum, we find that the settlement agreement was a valid and enforceable contract, which was binding on both Mother and Father. We also find that the trial court did not abuse its discretion when it adopted the shared parenting plan. Consequently, the trial court did not err when it granted Father's motion to enforce the settlement agreement and the shared parenting plan. Mother's first, second, third, fourth, fifth, sixth, and seventh assignments of error are not well taken.

## Assignment of Error Number Eight

"The court erred in failing to provide [Mother] an evidentiary hearing and denying [Mother's] motion to compel discovery, necessary to prove all issues claimed in appellant's [Civ.R. 60] motion."

## Assignment of Error Number Nine

"The court committed reversible error by applying an erroneous review to hold [Mother's] [Civ.R. 60(B) ] motion was without merit."

{¶ 24} In Mother's eighth and ninth assignments of error, she has argued that the trial court abused its discretion when it denied her November 22, 2002 Civ.R. 60(B) motion and motion for an evidentiary hearing. For the following reasons, this court declines to address Mother's eighth and ninth assignments of error.

{¶ 25} In Mother's Civ.R. 60(B) motion, Mother relied on Civ.R. 60(B)(1), and, in the alternative, Civ.R. 60(B)(3) and (B)(5), as grounds for relief. Thus, Mother presented the trial court with three reasons why the trial court should vacate its order adopting the shared parenting plan and settlement agreement: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud; and (3) any other reason

that would justify relief from judgment. Mother's Civ.R. 60(B) motion essentially presented the same arguments Mother raised in her first seven assignments of error. This court has previously held that the availability of Civ.R. 60(B) relief is generally limited to issues that cannot properly be raised on appeal. *Yakubik v. Yakubik* (Mar. 29, 2000), 9th Dist. No. 19587, 2000 WL 327229, at 4. Furthermore, Civ.R. 60(B) provides a means for collateral relief from a final judgment when "the interests of justice demand the setting aside of a judgment normally accorded finality." Id., quoting *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 21, 520 N.E.2d 564.

{¶ 26} Although this court specifically permitted Mother to supplement her appeal with the trial court's decision denying her Civ.R. 60(B) motion, this court finds that it has properly addressed Mother's arguments regarding the trial court's decision to adopt the settlement agreement and shared parenting plan in her first seven assignments of error. Therefore, we decline to address any issues relating to the denial of her Civ.R. 60(B) motion.

## III

{¶ 27} Mother's first, second, third, fourth, fifth, sixth, and seventh assignments of error are overruled; we decline to address her eighth and ninth assignments of error. The judgment of the trial court is affirmed.

Judgment affirmed.

SLABY, P.J., and CARR, J., concur.