**BRILLA, Appellee,**

v.

**MULHEARN, Appellant.**

[Cite as *Brilla v. Mulhearn,* 168 Ohio App.3d 223, 2006-Ohio-3816.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 23018.

Decided July 26, 2006.

Kenneth L. Gibson and Sharyl W. Ginther, for appellant.

Kandee S. Robinson, for appellee.

WHITMORE, Judge.

{¶ 1} Defendant-appellant, William P. Mulhearn, has appealed the judgment of the Summit County Court of Common Pleas, Domestic Relations Division ("Summit Domestic Relations Court"), which sustained plaintiff-appellee Cynthia L. Brilla's objections to a magistrate's decision terminating child support and finding her in contempt. This court reverses.

I

{¶ 2} William and Cynthia were divorced on April 21, 1992. Pursuant to the divorce decree, William was obligated to pay child support until "the child reaches the age of 18 and/or graduates from high school, which ever occurs last, or until the child is sooner emancipated." The divorce decree also stipulated that William would claim their son, John, as an income tax deduction and that the situation would be reevaluated if and when Cynthia became employed full time.

{¶ 3} On January 20, 2005, the Summit Domestic Relations Court filed an order that approved and adopted the Summit County Child Support Enforcement Agency ("CSEA") recommendation to terminate John's child support, because he had reached the age of 18 on January 13, 2005, and was no longer attending school.

{¶ 4} On June 8, 2005, CSEA filed a recommendation to terminate support for John. William requested an administrative hearing to argue that his obligation had already been terminated pursuant to the January 20, 2005 court order, which had not been appealed. At the hearing, Cynthia stated that while John had turned 18, he did not graduate from high school until June 5, 2005. Subsequently, CSEA recommended, pursuant to R.C. 3119.86, that child support for John was to terminate on June 5, 2005. On June 29, 2005, William requested court review of the administrative child-support order. On August 17, 2005, William filed a motion to show cause for contempt, for lump-sum judgment, and for attorney fees, with an affidavit claiming that contrary to the shared-parenting plan, Cynthia had claimed John as an income tax deduction without his consent. The affidavit further alleged that William's resultant inability to claim John as a deduction had cost him a total of $5,075.

{¶ 5} On September 7, 2005, a hearing was held before the magistrate concerning William's motions for contempt and to review the child-support order. At the hearing, the parties reached a settlement agreement, which was read into the record by William's counsel. The magistrate then asked both parties whether they heard, understood, and accepted the agreement as it had been read into the record—a full and complete agreement to rectify all the motions before the court. Both parties answered yes.

{¶ 6} On September 14, 2005, the magistrate issued a decision to reflect the settlement agreement. The decision stated that (1) William's child-support order would terminate effective January 13, 2005; (2) Cynthia was in contempt for claiming John for tax purposes, but no sentence was to be imposed; (3) William was awarded a lump sum judgment of $3,159, payable to him in $150 monthly installments; (4) Cynthia was to pay William's attorney fees of $350; and (5) Cynthia was to pay court costs of $100. On September 20, 2005, the Summit Domestic Relations Court adopted the magistrate's decision and made it an order of the court.

{¶ 7} On October 3, 2005, Cynthia filed a motion to set aside the magistrate's decision, which the trial court construed as objections to the magistrate's decision. On December 13, 2005, the trial court filed a final judgment entry ruling on Cynthia's objections. The trial court sustained Cynthia's objections, reversed the magistrate's decision, and ordered that William's child-support obligation terminated on June 5, 2005; dismissed William's claims for contempt, lump-sum judgment, attorney fees, and court costs; and ordered CSEA to calculate the amount of support owed Cynthia for the period of January 13, 2005, to June 5, 2005.

{¶ 8} William has timely appealed, asserting three assignments of error. The assignments of error have been consolidated for our review.

## II

### Assignment of Error Number One

The trial court abused its discretion in setting aside the settlement agreement of the parties.

### Assignment of Error Number Two

The trial court erred in dismissing the defendant's motions for contempt and review of administrative child support order issued by the Summit County Child Support Agency without a hearing.

Assignment of Error Number Three

The lower court erred in dismissing a request for review of an administrative order setting a different termination date from the termination date set forth in the final administrative determination approved and adopted by a final order of the court on January 20, 2005.

{¶ 9} In his assignments of error, William has argued that the trial court improperly set aside the parties' settlement agreement, dismissed his motions, and dismissed his request for review of an administrative support order. Primarily, William has argued that the parties entered into a fully enforceable settlement agreement before the magistrate and that that agreement should have precluded Cynthia's objections. We agree.

{¶ 10} Initially, we note that the trial court's decision sustained Cynthia's objections to the magistrate's decision and effectively reversed the magistrate's decision. "A decision to modify, affirm, or reverse a magistrate's decision lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion." *Kalail v. Dave Walter, Inc.,* 9th Dist. No. 22817, 2006-Ohio-157, 2006 WL 120064, at ¶ 5, citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. An abuse of discretion suggests more than a mere error in judgment, but indicates that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore,* 5 Ohio St.3d at 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 11} It is clear from the record that the parties entered into a settlement agreement. The agreement was negotiated off the record and then read into the record in open court. Further, the settlement agreement was acknowledged and agreed to by both parties on the record. These facts are undisputed.

{¶ 12} In sustaining Cynthia's objections and reversing the magistrate's decision, the trial court relied upon the fact that there were discrepancies between the settlement agreement as read into the record and the journalization of that agreement in the magistrate's decision. Specifically, the trial court found:

(1) That the settlement agreement called for $300 in attorney's fees, while the magistrate's decision granted $350 in attorney's fees.

(2) That the settlement agreement indicated that William would have received $5,075 if he had been able to claim the child, that he owed $1,916.25 in child support and that the balance owed was $3,159.

(3) That the settlement agreement indicated that, with the addition of the $100 court costs and $300 attorney's fees, the total judgment against Cynthia was to be $3,559, while the judgment of the magistrate would total $3,609.

(4) That the settlement agreement, as read into the record, specifically stated "that sum" ($3,559) was to be paid by Cynthia in monthly installments of $150

per month until the balance was paid in full. However, the magistrate's decision required Cynthia to pay the $350 in attorney's fees within 30 days and the court costs of $100 within 90 days. Under the magistrate's decision, only the balance of $3,159 was payable in monthly installments.

(5) That the agreement "[did] not appear to be clear to the parties as well as the magistrate."

{¶ 13} While we agree with the trial court that there are discrepancies between the agreed-upon settlement and the magistrate's decision documenting that agreement, we hold that the discrepancies do not nullify the settlement agreement that is clearly stated in the record. Specifically, regarding the discrepancies, this court cannot find that the magistrate's order of $350 in attorney fees instead of $300 is due to confusion or uncertainty regarding the settlement agreement. More likely than not, the discrepancy is a simple mistake, and a harmless one at that. Regarding court costs, it is clear that Cynthia agreed to pay court costs in the amount of $100. It is equally clear that the magistrate properly separated the payment of the court costs from the principal amount to be paid to William in installments. Court costs must be paid to the court.

{¶ 14} The record is clear that Cynthia agreed to the following: (1) that she was in contempt; (2) that the court would impose no consequence other than payment of the monies; (3) that William would have received $5,075 for those years in which she claimed John on her taxes; (4) that the $5,075 would be offset by the $1,916.25 William owed in child support, leaving a balance of $3,159; (5) that she would pay costs in the amount of $100 and attorney fees in the amount of $300, totaling $3,559; and (6) that she would pay that balance in its entirety in installments of $150 per month or be subject to a purge hearing.

{¶ 15} A settlement agreement entered into in the presence of the court constitutes a binding contract. *Meyer v. Meyer*, 9th Dist. No. 21023, 2002-Ohio-5038, 2002 WL 31115028, at ¶ 9, citing *Spercel v. Sterling Industries, Inc.* (1972), 31 Ohio St.2d 36, 60 O.O.2d 20, 285 N.E.2d 324, paragraph one of the syllabus, certiorari denied (1973), 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309. The purpose of a settlement agreement is "to terminate a claim by preventing or ending litigation and * * * such agreements are valid and enforceable by either party." *Brown v. Dillinger*, 9th Dist. No. 05CA0040–M, 2006-Ohio-1307, 2006 WL 709117, at ¶ 10. Settlement agreements are highly favored by the law. Id.

{¶ 16} Because a settlement agreement exists as a contract between two parties, its validity is governed by the general rules of contract construction. *Haas v. Bauer*, 156 Ohio App.3d 26, 2004-Ohio-437, 804 N.E.2d 80, at ¶ 16. Thus, typical defenses to a contract apply to settlement agreements as well. See id.

This court has held that "[a]bsent fraud, duress, overreaching, or undue influence, a settlement agreement entered into by parties in a divorce is enforceable." Id. Further, " 'to avoid a contract on the basis of duress, a party must prove coercion *by the other party to the contract.* It is not enough to show that one assented merely because of difficult circumstances *that are not the fault of the other party.*' " (Emphasis sic.) *Meyer*, 2002-Ohio-5038, 2002 WL 31115028, at ¶ 12, quoting *Blodgett v. Blodgett* (1990), 49 Ohio St.3d 243, 246, 551 N.E.2d 1249.

{¶ 17} Cynthia did not expressly allege duress in her response to William's brief opposing her motion to set aside the magistrate's decision. However, she did allege circumstances that could be construed as duress. According to Cynthia, she was "persuaded" to combine the contempt proceeding with the child-support review proceeding, she had planned to have counsel at the contempt proceeding, she did not fully understand the legal issues involved in the settlement agreement, and she proceeded pro se at the hearing solely out of a fear of criminal sanctions.

{¶ 18} This court is mindful that Cynthia's allegations are not proven fact. Instead, they are unsubstantiated allegations. After a thorough review of the record, we could not find any evidence of duress regarding this agreement. Further, we found no evidence of coercion on William's part. It is apparent to this court that Cynthia negotiated with William, in the presence of a neutral magistrate, and gave her unequivocal assent to the settlement agreement on the record in open court.

{¶ 19} According to Cynthia, she agreed to the settlement only because she was afraid of being criminally sanctioned, and the "resolution she was offered allowed her to avoid them." However, we note that such a quid pro quo is the precise purpose of settlement agreements. Based on her own arguments, Cynthia received a bargained-for exchange.

{¶ 20} This court has long held that " ' "when the parties agree to a settlement offer, [the] agreement cannot be repudiated by either party, and the court has the authority to sign a journal entry reflecting the agreement and to enforce the settlement." ' " *Haas*, 156 Ohio App.3d 26, 2004-Ohio-437, 804 N.E.2d 80, at ¶ 16, quoting *Shetler v. Shetler* (May 23, 2001), 9th Dist. No. 00CA0070, 2001 WL 542318, quoting *Klever v. Stow* (1983), 13 Ohio App.3d 1, 4, 13 OBR 1, 468 N.E.2d 58. We have also held that a settlement agreement may be enforced regardless of whether it has been reduced to writing, as long as the terms of the agreement can be established by clear and convincing evidence. *Shetler v. Shetler* (May 23, 2001), 9th Dist. No. 00CA0070, 2001 WL 542318. Clear and convincing evidence "is that 'which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " Id., quoting

*Cincinnati Bar Assn. v. Massengale* (1991), 58 Ohio St.3d 121, 122, 568 N.E.2d 1222.

{¶ 21} In *Shetler,* this court found by clear and convincing evidence that a binding, undocumented settlement agreement had been created based on one party's sworn deposition testimony in which he agreed to the terms of the settlement. In the present case, we have Cynthia's sworn testimony at the hearing in which she agreed to the terms of the agreement as read into the record. Thus, even disregarding the magistrate's documentation of that agreement, it is clear to this court that the terms of the agreement and Cynthia's assent to those terms may be established by clear and convincing evidence based on her sworn testimony.

{¶ 22} The settlement process is a highly valued part of our legal system. See *Brown,* 2006-Ohio-1307, 2006 WL 709117, at ¶ 10. The Ohio Supreme Court has held that permitting a party "to unilaterally repudiate a settlement agreement would render the entire settlement proceedings a nullity, even though, as we have already determined, the agreement is of binding force." *Spercel,* 31 Ohio St.2d at 40, 60 O.O.2d 20, 285 N.E.2d 324. See, also, *Haas,* 156 Ohio App.3d 26, 2004-Ohio-437, 804 N.E.2d 80, at ¶ 18.

{¶ 23} Cynthia's lack of knowledge concerning the legal issues involved does not affect her capacity to contract. Absent fraud, duress, overreaching, or undue influence, the settlement agreement is an enforceable contract, and it is the finding of this court that " 'people must be held to the promises they make.' " *Brown,* 2006-Ohio-1307, 2006 WL 709117, at ¶ 11, quoting *Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 17.

{¶ 24} Therefore, because the only evidence before us indicates that Cynthia admitted to the contempt claim and voluntarily entered into a settlement agreement, this court finds that the trial court abused its discretion when it sustained Cynthia's objections to the magistrate's decision and dismissed William's claim for contempt, attorney fees, court costs, and lump-sum judgment for Cynthia's contempt violation.

{¶ 25} William's assignments of error have merit.

## III

{¶ 26} Based on the foregoing, William's first, second, and third assignments of error are sustained. The judgment of the Summit County Domestic Relations Court is reversed. Further, the cause is remanded to the trial court with instructions to properly and accurately journalize the settlement agreement, reflecting that Cynthia was in contempt; that no sanctions other than payment of the monies due will be imposed; that Cynthia shall pay to William a total of

$3,459 payable in monthly installments of $150 per month until the balance is paid in full, or for approximately 23 months; and that Cynthia shall pay court costs in the amount of $100 to the Clerk of Courts according to customary procedure.

Judgment reversed
and cause remanded.

SLABY, P.J., and CARR, J., concur.