[Cite as *Frost v. Frost*, 2015-Ohio-3596.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


Raymond L. Frost,                               :

      Plaintiff-Appellant,               :

                                             No. 14AP-1044

v.                                              :       (C.P.C. No. 13DR-873)

Phyllis A. Frost,                               :       (ACCELERATED CALENDAR)

      Defendant-Appellee.                :


D E C I S I O N

Rendered on September 3, 2015


*Raymond L. Frost*, pro se.

*Lewis N. Osterman, III*, for appellee.


APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

SADLER, J.

{¶ 1} Plaintiff-appellant, Raymond L. Frost, pro se, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting a divorce and terminating his marriage to defendant-appellee, Phyllis A. Frost. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The parties were married on April 1, 1960. Four children were born of the marriage, and the youngest became emancipated in 1986. Until their separation, the parties lived in the marital residence located at 4708 Glendon Road, Columbus, Ohio. Appellant moved out of the marital residence on or about February 10, 2013.

{¶ 3}    Appellant filed a complaint for divorce on March 11, 2013.  Appellee filed an answer and counterclaim for divorce on March 22, 2013.  On July 24, 2013, a magistrate issued a temporary order requiring appellee to "pay and save" appellant harmless on one-half of the debt to Target, H.H. Gregg, and Home Depot.  The amount owing on each account is not set forth in the magistrate's order.

{¶ 4}    On September 13, 2014, the trial court held a final hearing in the case.  Both parties were present and represented by counsel at the hearing, and both parties were sworn and gave testimony at the hearing.  During her direct examination, appellee was asked to testify regarding the terms of the parties' settlement agreement.  Appellee proceeded to set forth the relevant terms of the parties' agreement regarding the division of marital property and the assignment of marital debt.

{¶ 5}    As a result of the hearing, the trial court granted the parties a divorce on the stated grounds of incompatibility.  The trial court ordered appellee's counsel to draft the divorce decree.  On November 5, 2014, appellant filed a "motion to proffer and set aside the 'in court agreement' between the parties and to set this matter for trial."  Appellant attached several exhibits to the motion including a list of household goods and furnishings that he claims were "not discussed" at the September 13, 2014 hearing and that were awarded to appellee in error.  Appellant also attached photographs of the inside of the marital residence that purport to show the items in dispute.

{¶ 6}    On November 13, 2014, appellant filed an "objection to the court approving any decree of divorce without a hearing," wherein appellant claims that he "hasn't had the opportunity to properly proffer his position concerning the division of marital property."  On November 20, 2014, the trial court denied appellant's November 13, 2014 objection, dismissed appellant's November 5, 2014 motion, and issued an "Agreed Judgment Entry Decree of Divorce" ("divorce decree").  The divorce decree indicates a prior approval by appellee and her legal counsel.  It also indicates that on November 11, 2014, the proposed entry was "[s]ubmitted but not approved" by appellant and his legal counsel.

{¶ 7}    Appellant filed his pro se notice of appeal to this court on December 19, 2014.

## II.  ASSIGNMENTS OF ERROR

{¶ 8}    Appellant sets forth the following assignments of error:

I. THE TRIAL COURT ERRED BY NOT EQUITABLY DIVIDING THE MARITAL DEBT, ASSETS AND PROPERTY IN THIS CASE—ACCORDING TO ORC 3105.171.

II. THE TRIAL COURT ERRED IN GRANTING THE CONTENTS OF THE RESIDENCE LOCATED AT 4708 GLENDON RD, COLUMBUS OHIO 43229 TO THE DEFENDANT APPELLEE.

III. THE TRIAL COURT ERRED IN REQUIRING THE PLAINTIFF APPELLANTS TOOLS BE LIQUIDATED BUT NOT THE CONTENTS OF THE RESIDENCE AT 4708 GLENDON ROAD, COLUMBUS, OHIO 43229.

IV. THE TRIAL COURT ERRED IN NOT ENFORCING MAGISTRATE BLACKS TEMPORARY ORDER ON JULY 13, 2013 FOR THE DEFENDANT-APPELLEE TO PAY HALF ON (3) OF THE CREDITORS—TARGET, HOME DEPOT AND HH GREG AND GRANTED VISITATION OF THE DOG WEEK ON WEEK OFF.

V. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT-APPELLEE—THE PRUDENTIAL SHARES AND ALL PROCEEDS FROM THE PLAINTIFF APPELLANT'S PRUDENTIAL ACCOUNT—DUE TO THE IN-EQUITABLE DIVISION OF MARITAL ASSETS.

VI. THE TRIAL COURT ERRED IN DENYING THE PLAINTIFF-APPELLANT THE RIGHT TO PROFFER AND SET ASIDE THE 'IN COURT AGREEMENT' AND TO SET THIS CASE FOR TRIAL AS REQUESTED BY THE MOTION FILED ON NOVEMBER 5, 2014.

## III.  STANDARD OF REVIEW

{¶ 9}   A trial court's decision regarding the enforcement of a settlement agreement in a divorce case is reviewed for an abuse of discretion. *Betts v. Betts*, 3d Dist. No. 5-12-33, 2013-Ohio-1938, ¶ 9, citing *Schneider v. Schneider*, 110 Ohio App.3d 487, 491 (11th Dist.1996).  A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. *Chawla v. Chawla*, 10th Dist. No. 13AP-399, 2014-Ohio-1188, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  There is no abuse of discretion where there is some competent, credible evidence supporting the trial court's decision. *Id.*, citing *Ross v. Ross*, 64 Ohio St.2d 203 (1980).  When applying the

abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore* at 219.

## IV. LEGAL ANALYSIS

### A. Appellant's Sixth Assignment of Error

{¶ 10} Because we find that appellant's sixth assignment of error is dispositive of the appeal, we will consider it first. In his sixth assignment of error, appellant argues that the trial court abused its discretion when it reduced the parties' in-court settlement agreement to judgment without his consent. We disagree.

{¶ 11} " ' "Settlement agreements are favored in the law. Where the parties enter into a settlement agreement in the presence of the court, such an agreement constitutes a binding contract." ' " *Montgomery v. Montgomery*, 10th Dist. No. 06AP-555, 2007-Ohio-2787, ¶ 15, quoting *Gregory v. Gregory*, 2d Dist. No. 2006 CA 15, 2007-Ohio-1033, ¶ 10, quoting *MacNealy v. MacNealy*, 2d Dist. No. 96 CA 125 (Oct. 31, 1997). *See also Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36 (1972), paragraph one of the syllabus. "A settlement agreement ' "may be either written or oral, and may be entered into prior to or at the time of a divorce hearing." ' " *Nyamusevya v. Nkurunziza*, 10th Dist. No. 10AP-857, 2011-Ohio-2614, ¶ 11, quoting *Haas v. Bauer*, 156 Ohio App.3d 26, 2004-Ohio-437, ¶ 16, quoting *Muckleroy v. Muckleroy*, 9th Dist. No. 14443 (Sept. 5, 1990).

{¶ 12} "Neither a change of heart nor poor legal advice is a ground to set aside a separation agreement. A party may not unilaterally repudiate a binding settlement agreement." *Walther v. Walther*, 102 Ohio App.3d 378, 383 (1995), citing *Spercel* at 40. "[S]o long as the court is satisfied that [the agreement] was not procured by fraud, duress, overreaching or undue influence, the court has the discretion to accept it without finding it to be fair and equitable." *Id.* "A trial court may even adopt an in-court settlement agreement into its judgment and enforce it even if one party later will not give approval." *Jackson v. Bellomy*, 10th Dist. No. 99AP-691 (Mar. 30, 2000), citing *Torrence v. Torrence*, 5th Dist. No. 1996CA00223 (July 31, 1997), following *Gulling v. Gulling*, 70 Ohio App.3d 410 (9th Dist.1990). In a divorce proceeding, where the parties' in-court settlement agreement is complete, the trial court may adopt the proposed judgment entry submitted by the wife if it is found to follow the terms of the in-court settlement agreement, even though the husband refuses to give his written approval. *Gulling.*

{¶ 13} An oral settlement agreement in a divorce action "can be enforced by the court in those circumstances where the terms of the agreement can be established by clear and convincing evidence." *Pawlowski v. Pawlowski*, 83 Ohio App.3d 794, 799 (10th Dist.1992). *See also Michaels v. Michaels*, 9th Dist. No. 09CA0047-M, 2010-Ohio-963, ¶ 8, citing *Campbell v. Buzzelli*, 9th Dist. No. 07CA0048-M, 2008-Ohio-725. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 14} In this instance, the parties entered into a settlement agreement in open court and under oath. Appellant does not deny that the parties reached an agreement. Rather, he contends that the parties' in-court settlement agreement is incomplete in that it fails to account for certain marital debt, income, and household goods and furnishings. Appellant argues that the trial court erred when it enforced the in-court settlement agreement without his written approval. Appellant further alleges that the trial court erred when it issued the divorce decree without making a determination that it is fair and equitable.

{¶ 15} Following appellee's testimony regarding the terms of the parties' settlement agreement, the transcript reveals the following exchange:

> [Appellant's Counsel]: You heard the terms stated. Do you agree with those terms?
>
> [Appellant]: Except for the charge cards.
>
> THE COURT: Well, I thought we had the case settled here where you were keeping the guns, the plane, the Gold Wing, the Fiero, and the items you will get from her house, your bedroom set, the living room set, the 60-inch TV, the clock collection, your clothes and your shoes, and you will get those in a U-Haul within - - is 30 days enough time for you to get your stuff?
>
> [Appellant]: Yeah.
>
> THE COURT: Thirty days, you sure? You want to put 45?
>
> [Appellant's Counsel]: Let's put 45 days.

THE COURT: - - within 45 days or she can get rid of it.  You get your stuff within 45 days with a U-Haul or she can get rid of your clothes.

[Appellant]:  Okay.

THE COURT:  All right. I thought you folks had agreed that - -

[Appellant's Counsel]:  Can I have just a second, Your Honor?

THE COURT:  Yeah.

Thereupon, a discussion was held off the record.

(Tr. 8-9.)

{¶ 16} Following the off-the-record discussion, the trial court responded to questions from appellee concerning the terms of the agreement.  Neither appellant nor his trial counsel followed up on appellant's earlier exception to the settlement terms.  At the close of the hearing, the following exchange took place:

THE COURT:  So Mr. Lewis will do the decree, your lawyer will look at it and sign it, and you can sign it and look at it if you like, and we are done.

[Appellee's Counsel]:  Thank you, Your Honor.

THE COURT:  Okay.  Thank you.

[Appellant's Counsel]:  Thank you.

Thereupon, the proceedings in this matter were adjourned.

(Tr. 13.)

### B.  Household Goods and Furnishings

{¶ 17} In his November 5, 2014 motion to set aside the in-court settlement agreement, appellant identified certain household goods and furnishings that he claims were omitted from the in-court settlement agreement.  Appellant claims that because the in-court settlement agreement is incomplete as to these household goods and furnishings, the trial court erred by enforcing the in-court settlement agreement without his written

approval.  Appellant further contends that the divorce decree awards a disproportionate share of marital household goods and furnishings to appellee.

{¶ 18} Our review of the transcript of the hearing reveals that, contrary to appellant's assertion, the parties' in-court settlement agreement disposes of all marital household goods and furnishings.  The trial transcript provides, in relevant part, as follows:

> THE COURT: And she is keeping the dog. *And each is keeping - - other than what was said here, household goods in each of your names.*  And each is going to be responsible for the debts in each of your names and that is going to be it.
>
> Who is going to be writing the decree up?
>
> [Appellee's Counsel]:  I will.  I already have it.

 (Emphasis added.)  (Tr. 11.)

{¶ 19} Appellant does not contend that any of the disputed household goods and furnishings included titled property, and there is no such property mentioned in appellant's November 5, 2014 motion.  Thus, the only reasonable conclusion to be drawn from the trial court's statement at the hearing is that the trial court simply misspoke when it referred to household goods "in each of your names," rather than "in their respective possessions," as is set forth in the divorce decree.  (Tr. 11; Nov. 20, 2014 Agreed Judgment Entry Decree of Divorce, 4.)

{¶ 20} Based upon a reasonable reading of the trial court transcript, we find that the record contains clear and convincing evidence of a binding and enforceable in-court settlement agreement between the parties regarding all marital household goods and furnishings.  *Pawlowski.*  Under the established case law, where the parties' in-court settlement agreement is complete and the proposed judgment entry is consistent with the terms of the in-court settlement agreement, the trial court may enforce the in-court settlement agreement even though one of the parties refuses to give written approval. *Jackson*; *Torrence*; *Gulling*.  Because the divorce decree is consistent with the terms of the in-court settlement agreement regarding household goods and furnishings, the trial court did not abuse its discretion when it issued the divorce decree without appellant's written approval.  *Jackson*; *Torrence*; *Gulling*.

{¶ 21} Furthermore, to the extent that appellant claims that the in-court settlement agreement resulted in an unfair and inequitable division of household goods and furnishings, we note that absent fraud, duress, overreaching, or undue influence, a trial court has the discretion to enforce an in-court settlement agreement without finding it to be fair and equitable. *Walther* at 383. Appellant does not claim on appeal that the in-court settlement agreement was the result of fraud, duress, overreaching, or undue influence in regard to the marital household goods and furnishings. Moreover, the record establishes that appellant lived in the marital residence for years, and the trial court permitted appellant's designated representative to enter the marital residence and conduct a "visual/recorded inspection." (Oct. 13, 2013 Magistrate's Order, 2.) Consequently, appellant was well aware of the household goods and furnishings in appellee's possession at the time of the hearing, and he could have expressed his disagreement with the terms of the in-court settlement agreement at that time. *Id.* Appellant's subsequent change of heart about the fairness of the division of household goods and furnishings is not a valid ground to set aside the in-court settlement agreement. *Id. See also Murray v. Murray*, 6th Dist. No. L-09-1305, 2011-Ohio-1546 (dissatisfaction with or general remorse about consenting to an in-court settlement agreement may indicate a change of heart, but it is an insufficient justification to invalidate the agreement).

{¶ 22} For the foregoing reasons, we find that the trial court did not abuse its discretion when it enforced the parties' in-court settlement agreement regarding household goods and furnishings. Furthermore, because the parties entered into a binding and enforceable in-court settlement agreement regarding the division of marital household goods and furnishings, the trial court was relieved of the obligation to determine that the division was fair and equitable. *Walther* at 383. *See also Colosimo v. Colosimo*, 8th Dist. No. 91883, 2009-Ohio-3892, ¶ 11 (an in-court settlement agreement in a divorce action cannot be rescinded by one of the parties on the basis of an alleged lack of fairness or inequities); *Szmania v. Szmania*, 8th Dist. No. 90346, 2008-Ohio-4091, ¶ 8 ("[T]he court does not have a duty to determine if the agreement is fair and equitable when the parties enter into an in-court settlement agreement.").

### C. Prudential Insurance Policy

{¶ 23} With regard to the Prudential insurance policy identified in appellant's November 5, 2014 motion, we note that both the divorce decree and the trial transcript establish that appellee is to receive all Prudential shares. Appellee responded in the affirmative when the trial court asked her if the agreement called for her to receive "all of the Prudential money?" (Tr. 5.) Additionally, in explaining to appellee why she was not keeping the Pontiac Fiero, the trial court stated "you are getting the Prudential shares to make up for the [$]4,000 difference." (Tr. 10.) Thus, the trial transcript contains clear and convincing evidence of an enforceable in-court settlement agreement awarding all Prudential shares to appellee. *Pawlowki*.

{¶ 24} To the extent that appellant now claims that appellee failed to disclose certain gains she derives from a dividend producing Prudential insurance policy, we note that appellee's affidavit, filed pursuant to Loc.R. 17, lists a Prudential dividend of $627.56/yearly and provides the account number for the policy. Although appellant now argues that appellee intentionally failed to disclose the fact that the size of her dividend will increase over time, such information would have been readily available to appellant from the policy terms. Thus, the record does not support appellant's claim that the parties' in-court settlement agreement was the result of fraudulent conduct on the part of appellee with regard to the Prudential insurance policy.

{¶ 25} Upon review of the transcript, we find that the parties agreed that appellee was to retain "all bank accounts and insurance policies" in her name. (Tr. 6.) We further find that the divorce decree issued by the trial court is consistent with the terms of the in-court settlement agreement.

{¶ 26} Accordingly, we find no abuse of discretion on the part of the trial court in enforcing the in-court settlement agreement as it relates to the Prudential policy. *Walther*; *Jackson*; *Torrence*; *Gulling*.

### D. Credit Cards

{¶ 27} The transcript of the September 13, 2014 hearing shows that appellant agreed with the division of marital property set forth by appellee's testimony "[e]xcept for the charge cards." (Tr. 8.) Appellant did not specify the "charge cards" to which he was referring, nor did he or his counsel pursue the exception following an "off the record"

discussion.  As noted above, appellant's November 5, 2014 motion to set aside the in-court settlement agreement speaks only to the household goods and furnishings.

{¶ 28} Appellant's Loc.R. 17 affidavit indicates that on March 11, 2013, the parties jointly owed the following consumer debts: $660 to Home Depot for household items; $3,190 to Target for household and personal items; and $1,600 to H.H. Gregg for a television.  Appellee's June 28, 2013 affidavit in support of her motion for temporary orders confirms that the H.H. Gregg and Target accounts are solely in appellant's name.  As noted above, the trial court stated at the hearing that the parties had agreed as follows: "[E]ach [party] is going to be responsible for the debts in each of your names and that is going to be it."  (Tr. 11.)  The trial transcript also contains the following:

> [The Court]:  And you will maintain all the debts in your name?
>
> [Appellee]:  Yes.

(Tr. 6.)

{¶ 29} Based upon the foregoing, we find that the record contains clear and convincing evidence that, other than those marital debts specifically mentioned at the hearing, the parties agreed that each would assume any marital debt in their own name.  Thus, the in-court settlement agreement necessarily encompasses the debts to H.H. Gregg, Target, and Home Depot even though those debts were not specifically mentioned at the hearing.  The divorce decree mirrors the in-court settlement agreement by stating: "Each party shall pay, indemnify and save the other party harmless upon the indebtedness incurred in their individual names not otherwise mentioned herein."  (Nov. 20, 2014 Agreed Judgment Entry Decree of Divorce, 5.)  There is no claim of fraud, duress, overreaching, or undue influence on the part of appellee with respect to the marital debt.

{¶ 30} Thus, the trial court did not abuse its discretion when it enforced the parties' in-court settlement agreement regarding marital debt without making a determination that it was fair and equitable even though appellant did not give written consent. *Walther*; *Jackson*; *Torrence*; *Gulling.*

{¶ 31} Appellant nevertheless contends that the trial court abused its discretion by enforcing the in-court settlement agreement concerning marital debt in light of the magistrate's prior "Temporary Order" concerning the charge cards.  We disagree.

{¶ 32} The Magistrate's July 24, 2013 order, issued pursuant to Civ.R. 75(N), requires appellee to "pay and save" appellant harmless on one-half of the debt to Target, H.H. Gregg, and Home Depot.  Temporary orders, issued pursuant to Civ.R. 75(N), that allocate custody between parents or require temporary child or spousal support are interlocutory orders, not final judgments.  *Huffer v. Huffer*, 10th Dist. No. 09AP-574, 2010-Ohio-1223, ¶ 12, citing *State ex rel. Thompson v. Spon*, 83 Ohio St.3d 551, 554 (1998).  The Supreme Court of Ohio has held that, " '[i]n a domestic relations action, interlocutory orders are merged within the final decree, and the right to enforce such interlocutory orders does not extend beyond the decree, unless they have been reduced to a separate judgment or they have been considered by the trial court and specifically referred to within the decree.' "  *Id.*, quoting *Colom v. Colom*, 58 Ohio St.2d 245 (1979), syllabus.  The July 24, 2013 order was never reduced to judgment, and the in-court settlement agreement makes no reference to that order.  Consequently, it was within the discretion of the trial court to enforce the parties' in-court settlement agreement notwithstanding the prior temporary order.[1]

{¶ 33} Based on the foregoing, we find that the trial court did not abuse its discretion when it issued a divorce decree that enforced the parties' in-court settlement agreement regarding marital debt even though it varied from the magistrate's prior order.  *Huffer.*

### E.  Appellant's Tools

{¶ 34} Appellant argues that it is unfair and inequitable to auction off his tools and equally divide the proceeds from the sale yet permit appellant to keep the majority of the household goods and furnishings without requiring a similar sale and distribution.  We note that appellant did not challenge the trial court's disposition of his tools in his November 5, 2014 motion, nor does he claim on appeal that the tools are his separate property.  Appellant acknowledged in his November 5, 2014 motion that the trial court

"discussed" his tools at the September 23, 2014 hearing and that the trial court ordered the following: "Tools - Mechanical and Construction to be auctioned."  (Nov. 13, 2014 Motion, Plaintiff's Exhibit 1.)  The trial transcript provides as follows:

> [Appellee's Counsel]:  And you understand the tools at both your place and [appellant's] place will be sold by an auctioneer, correct?
>
> [Appellee]:  Yes.
>
> * * *
>
> THE COURT:  All right.  And then I guess the attorneys will pick an auctioneer, or it will say that the tools at each house is going to be done by auctioneer, and any mowers or log splitter or any other types of tools in the back, and - -
>
> [Appellant's Counsel]:  Yes.

(Tr. 6, 11.)

{¶ 35}  The record contains clear and convincing evidence that the parties agreed to auction appellant's tools and divide the proceeds of the sale equally.  The divorce decree provides that "[t]he parties' lawn mowers, log splitter, and tools (located at both parties' residences and any other storage area where said property is located) shall be sold by an auctioneer who shall divide the proceeds of the sale equally between the parties." (Nov. 20, 2014 Agreed Judgment Entry Decree of Divorce, 5.)  Appellant does not claim that the parties' in-court settlement agreement regarding the disposition of his tools was the result of fraud, duress, overreaching, or undue influence.

{¶ 36}  Accordingly, the trial court did not abuse its discretion by enforcing the in-court settlement agreement in regard to appellant's tools without making a determination that it was fair and equitable even though appellant did not give his written consent. *Walther*; *Jackson*; *Torrence*; *Gulling*.

---

[1] The evidence in the record shows that the parties incurred the debt to H.H. Gregg for the purchase of the 60-inch television that appellant was awarded pursuant to the in-court settlement agreement.

### F. Family Pet

{¶ 37} A review of the transcript shows that the trial court was aware of the terms of the parties' settlement agreement at the time it conducted the hearing to place the parties' settlement agreement on the record. The trial court unequivocally stated that "[appellee] is keeping the dog." (Tr. 11.) Appellant did not object to this portion of the agreement either in open court or in his post-hearing motions, nor was there any claim of fraud, duress, overreaching, or undue influence that would invalidate the in-court settlement agreement. Thus, the record contains clear and convincing evidence that the parties came to an enforceable agreement regarding the family pet. *Walther*; *Jackson*;*Torrence*; *Gulling.*

{¶ 38} Nevertheless, appellant claims that the trial court abused its discretion when it enforced the parties' in-court settlement agreement regarding the family dog because it varied from the magistrate's previous order that "[t]he parties shall each alternate taking care of the dog on a week on week off basis." (July 24, 2013 Magistrate's Temporary Order, 2.) As noted above, temporary orders are not final and have no force and effect beyond the final decree unless they have been reduced to a separate judgment or they have been considered by the trial court and specifically referred to within the decree. *Huffer.* The parties' in-court settlement agreement does not make reference to the prior temporary order.[2]

{¶ 39} Based on the foregoing, we find that the trial court did not abuse its discretion when it enforced the in-court settlement agreement regarding the family pet.

{¶ 40} In the final analysis, we find that the record contains clear and convincing evidence that the essential terms of the parties' settlement agreement, as placed in the record without objection by appellant (except for the articulated exception for "the credit cards"), were incorporated into a written divorce decree. Accordingly, we hold that the trial court did not abuse its discretion when it enforced the parties' in-court settlement agreement and issued the divorce decree. Appellant's sixth assignment of error is overruled.

---

[2] We note that the magistrate also ordered appellant to pay one-half of the expenses associated with the dog, but neither the parties' in-court settlement agreement nor the divorce decree imposes any such obligation on appellant.

### G. Appellant's Assignments of Error One Through Five

{¶ 41} Appellant's remaining assignments of error challenge specific terms of the parties' in-court settlement agreement as being unfair and inequitable. As previously noted, where parties enter into a settlement agreement in the presence of the trial court, such an agreement constitutes a binding contract, and as long as the court is satisfied that the agreement was not procured by fraud, duress, overreaching, or undue influence, the court has the discretion to accept it without finding it to be fair and equitable. *Walther* at 383. *See also Spercel* at paragraph one of the syllabus. Therefore, having determined that the trial court did not abuse its discretion when it enforced the parties' in-court settlement agreement and issued the divorce decree, we need not examine the specific terms of the divorce decree in order to determine whether they are fair and equitable. *Id.* Accordingly, appellant's first, second, third, fourth, and fifth assignments of error are moot.

## V. CONCLUSION

{¶ 42} Having overruled appellant's sixth assignment of error and having found that appellant's first, second, third, fourth, and fifth assignments of error are moot, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

DORRIAN and BRUNNER, JJ., concur.

———————————