DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Patrick and Susan Hughes, appeal the judgment of the Lorain County Court of Common Pleas that approved an agreed judgment entry implementing the terms of the parties' settlement. This Court affirms.
 I. {¶ 2} The parties to this case are neighbors who, for several years, have been embroiled in a dispute regarding the terms of a restrictive covenant. In 1986, Michael and Marilynn Grim purchased 48.2 acres of property with Daniel and Sandra Yanikov and Gene and Sandra Mills. The three couples divided a portion of the property into three parcels and transferred the remaining land, designated as common areas, to a partnership formed among themselves. The couples then entered into a restrictive covenant regulating use of the land. Among other things, the covenant limited the type of buildings that could be constructed; reserved for each property owner easements for various purposes, including ingress and egress to the property and access to *Page 2 
the shoreline of a common lake; regulated the construction of fences and enclosures for keeping animals; and restricted the use of a common area. The covenant also provided a process for allocating the cost of necessary repairs to the property.
 {¶ 3} In 1998, the Grims sold 3.819 acres to Patrick and Susan Hughes. The Hugheses did not join the partnership. Disagreements soon erupted between the Hugheses and their new neighbors, and the Hugheses commenced this litigation on July 20, 2005. Their complaint, filed in the Lorain County Court of Common Pleas, alleged breach of contract, with respect to the terms of the restrictive covenant, against the Grims, the Yanikovs, Mrs. Mills, and Shiloh Partnership, and breach of contract, with respect to their purchase agreement, against the Grims. The Hugheses named the Rural Lorain County Water Authority (RLCWA) as a defendant, alleging improper installation of a water tap. In addition, the Hugheses asked the trial court to determine the rights and obligations of the parties under the restrictive covenant; to order an accounting of funds deposited by the Grims in escrow for repairs in connection with the 1998 sale; to enjoin RLCWA from terminating water service or requiring a new water tap; and to compel the neighboring property owners to allow the Hugheses to use the shoreline easement to which they claimed a right. The Grims, Yanikovs, and Mrs. Mills filed motions to dismiss, which the trial court denied. Each then answered and asserted counterclaims against the Hugheses and cross-claims against their fellow defendants.
 {¶ 4} On February 3, 2006, the parties reached agreement on the terms of a settlement and dictated those terms into the record. On May 5, 2006, a pretrial was held and the parties informed the trial court that they had reached a settlement. The trial court responded with a journal entry on May 11, 2006:
 "Pre-trial had. Parties have advised court settlement has been reached. Parties to submit journal entry concerning settlement within 30 days. In the event no entry *Page 3 
is submitted, any party may submit motion concerning settlement for court's consideration."
The parties were unable to reach agreement on the terms of a journal entry, however, and on July 7, 2006, Mrs. Mills and the Grims moved the trial court to enforce the settlement agreement. The Hugheses responded in opposition, alleging that the defendants "ha[d] overreached in the proposed journal entry and amendments to the covenants beyond the agreement, and in a manner detrimental to the Plaintiffs."
 {¶ 5} After conducting a hearing, the trial court granted the motion to enforce on December 27, 2006, finding that "there existed an agreement to settle all claims and that said agreement is sufficiently detailed to enforce." The trial court ruled on nine disputed items put forward by the Hugheses and ordered the parties to file an agreed judgment entry:
 "Having ruled on the disputed issues, the Court orders the parties to make a good faith effort to sign the Amended and Restated Declaration of Restrictions, Covenants and Agreements Effecting Real Property and an Agreed Judgment Entry, all consistent with this order. In the event this can not be accomplished within 45 days, the parties are granted leave to submit to the court such documents as they believe to be consistent with this Court's ruling and the Court will consider approving and journalizing the appropriate documents. However, nothing herein shall preclude any party from filing a further motion to enforce and/or for sanctions."
Instead, the Hughes moved to set aside the trial court's order, purportedly under Civ. R. 60(B)(4). The trial court denied the motion on June 20, 2007.
 {¶ 6} The parties, however, still failed to provide an agreed judgment entry. On July 3, 2007, the Hugheses moved the trial court for a hearing on two issues which, they alleged, exceeded the scope of the settlement terms. Mrs. Mills moved the trial court to require the Hugheses to execute an amended covenant and deliver it to the defendants for recording. On August 9, 2007, over one and one-half years after the parties placed the terms of their settlement on the record, the trial court journalized two orders: the first ordered the Hugheses to execute the *Page 4 
covenant and deliver it for recording and approved an agreed judgment entry submitted by the defendants; the second consisted of that agreed judgment entry. It is from the August 9, 2007, orders that the Hugheses have taken this appeal. They raise two assignments of error for review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS, WHEN FOLLOWING A HEARING HELD PURSUANT TO RULLI V. FAN CO. (1977), 79 OHIO ST.3D 347, IT IMPOSED SETTLEMENT TERMS AND CONDITIONS ON APPELLANTS, UPON WHICH NO AGREEMENT HAD BEEN REACHED."
 {¶ 7} The Hugheses' first assignment of error is that the trial court erred by granting the Appellees' motion to enforce the February 3, 2006, settlement agreement. They argue that no enforceable agreement existed because the parties failed to reach a meeting of the minds on a material term: the permissible size of a manure pile on their property.
 {¶ 8} A motion to enforce a settlement agreement may present questions of both law and fact, and this Court's standard of review varies accordingly. Brown v. Dillinger, 9th Dist. No. 05CA0040-M,2006-Ohio-1307, at ¶ 7-8. When an appeal raises questions of law, this Court's review is de novo. Id. at ¶ 8, citing Kaple v. BenchmarkMaterials, 3d Dist. No. 13-03-60, 2004-Ohio-2620, at ¶ 4. Conversely, this Court reviews questions of fact to determine whether the trial court's findings are supported by sufficient evidence. Brown at ¶ 7.
 {¶ 9} "[A] settlement agreement is a contract designed to terminate a claim by preventing or ending litigation[.]" Catanzaro Sons Daughters, Inc. v. Trio Food Distribs., Inc. (Apr. 27, 2001), 1st Dist. No. C-000584 at *2. See, also, In re All Kelley Ferraro AsbestosCases, 104 Ohio St.3d 605, 2004-Ohio-7104, at ¶ 28; Davis v.Jackson, 159 Ohio App.3d 346, 2004-Ohio-6735, at ¶ 14. When parties have agreed to the terms of a settlement, a *Page 5 
trial court may sign a journal entry reflecting the terms and may enforce the agreement. Brilla v. Mulhearn, 168 Ohio App.3d 223,2006-Ohio-3816, at ¶ 20.
 {¶ 10} A trial court may enforce an oral settlement as long as the terms of the agreement are established by clear and convincing evidence. Id. at ¶ 20. As the Supreme Court of Ohio has concluded:
 "It is preferable that a settlement be memorialized in writing. However, an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract. Terms of an oral contract may be determined from `words, deeds, acts, and silence of the parties.' * * * A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." (Internal citations omitted.) Kostelnik v. Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, at ¶ 15-16.
When the existence of a settlement is disputed, a trial court must conduct an evidentiary hearing before entering judgment. Rulli v. FanCo. (1997), 79 Ohio St.3d 374, syllabus. Not every ambiguity is sufficient to undermine an oral settlement, however, because "`[a]ll agreements have some degree of indefiniteness and some degree of uncertainty. * * * In spite of ignorance as to the language they speak and write, with resulting error and misunderstanding, people must be held to the promises they make.'" Kostelnik at ¶ 17, quoting 1 Corbin on Contracts (Perillo Rev. Ed. 1993) 530, Section 4.1.
 {¶ 11} The Hugheses maintain that the parties never reached an enforceable settlement agreement because they failed to achieve a meeting of the minds on the permissible size of a manure pile on their property. The terms of the settlement that were placed on the record, and to which each of the property owners agreed, included the following:
 "It is agreed that the manure pile, which is on the Hughes property, will be limited to a three by three by three foot pile and that the excess will not remain on the premises.
 "* * * *Page 6 
 "Finally, [counsel for the Hugheses] pointed out that the manure piles are to be of approximately those sizes, but all of this is to be kept within very reasonable grounds."
The defendants proposed a judgment entry in 2006 which provided that "[i]t is the order of this Court that Plaintiff Hughes shall limit the amount of manure on his property to no more than a single pile which is no more than 3' x 3' by 3 feet. It is the declaration of this Court that having more manure than a 3'x3'x3' pile shall constitute a nuisance. The current pile shall be removed within 20 days of the entry of this order on the journal of this Court."
 {¶ 12} The Hugheses refused to approve the agreement, and the trial court considered their argument regarding the manure pile in connection with the defendants' motion to enforce the settlement agreement. The trial court conducted a Rulli hearing on October 4, 2006. During the hearing, counsel for the Hugheses represented that his clients had since reached the conclusion that "3 foot x 3 foot x 3 foot is not an amount that is excessive or that can be done because, based on these horses, that would accumulate very frequently and would be unduly burdensome to try and get rid of this amount of waste that quickly." Opposing counsel countered that "the only discussion that we had was 3 x 3 x 3." Mr. Hughes, who testified during the hearing, expressed the opinion that a three-foot square manure pile was unreasonable:
 "Q: Do you have an opinion as to what is required to have a reasonable amount of manure stored prior to disposition?
 "A: Yes.
 "Q: And what is that opinion?
 "A: If it were to be put in a containment structure, the structure can be 12 x 12. If it is in a containment structure. If does not have to be put into a containment structure[.] * * * [It] does not have to be put in a containment structure as long as there's positive drainage and 10 foot of grass around it.
 "Q: And, to that extent, how much would be stored on your property prior to having to dispose of it? *Page 7 
 "A: Approximately 20 x 20 x 4."
Mr. Hughes confirmed that he had been in communication with his attorney and had authorized him to enter into the settlement on February 3, 2006.
 {¶ 13} In its order dated December 27, 2006, the trial court concluded:
 "[The Hugheses] complain that the proposed provision limiting the size of a manure pile to 3'x3' x3' is unduly restrictive and contrary to the agreement. * * * [T]he Court agrees that the terms of the transcribed settlement agreement provide that `the manure piles are to be approximately those sizes, but all of this within very reasonable limits.' As such, the proposed language of [the covenant] must be modified to expressly indicate that the manure pile is to be no larger than `approximately' 3' x3' x3' and shall be kept within those `very reasonable limits', or words to that effect. Clearly terms such as `approximate' and `within very reasonable limits' allow for some ambiguity and possible future disagreement; however, those are the terms agreed upon by the parties. It is not for this Court to impose greater or lesser restrictions not agreed upon. Nor is the Court to render an advisory opinion; however, the proposed size of the manure pile suggested by Mr. Hughes in his testimony in court was clearly excessive. As a 3' x3' x3' pile contains 27 cubic feet, a pile that exceeded that amount by 25%, to wit: 33.75 cubic feet would seriously challenge the meaning of `approximately' and `within reasonable limits.'"
As the trial court observed, Mr. Hughes' testimony at the Rulli hearing indicated dissatisfaction with the terms of the settlement in hindsight, but did not undermine the existence of the agreement. Sufficient evidence supports the trial court's conclusions and insertion of the limiting language that had been omitted from the journal entry proposed by the defendants, thus reflecting precisely the parties' agreement regarding the size of the manure pile.
 {¶ 14} This Court agrees that neither the terms employed by the parties nor the Hugheses' after-the-fact misgivings demonstrated that there was no meeting of the minds on an essential term of the agreement. Parties cannot repudiate a settlement agreement when, in hindsight, they find that they no longer agree with the terms. Shetler v. Shetler (May 23, 2001), 9th Dist. No. 00CA0070 at *2. The Hugheses' first assignment of error is overruled. *Page 8 
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS, WHEN IT DENIED APPELLANTS' MOTION TO SET ASIDE A SETTLEMENT AGREEMENT AND PROCEED TO TRIAL, WHERE THE PROCEEDINGS AND EVIDENCE ESTABLISHED THAT THERE WAS NO `MEETING OF THE MINDS' ON MATERIAL TERMS OF THE PROPOSED SETTLEMENT AGREEMENT."
 {¶ 15} The Hugheses' second assignment of error is that the trial court erred by denying their motion to set aside the trial court's December 27, 2006, order. They have argued, yet again, that there had been no meeting of the minds regarding the terms of settlement. The Hugheses' second assignment of error is rendered moot by this Court's disposition of the first assignment of error. See App. R. 12(A)(1)(c).
 III. {¶ 16} The Hugheses' first assignment of error is overruled, and this Court declines to address their second assignment of error. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. *Page 9 
Costs taxed to Appellants.
DONNA J. CARR FOR THE COURT
 SLABY, J. DICKINSON, J. CONCUR *Page 1