OPINION *Page 2 
 I. Facts Procedural History {¶ 1} Defendant-appellant, Keri L. Johnson (hereinafter "Keri"), appeals the decision of the Hancock County Court of Common Pleas finding her in contempt of court for failing to pay an equity loan to Fifth Third Bank, which she was obligated to pay and from which she was to hold harmless her ex-husband, plaintiff-appellee, Jeffrey R. Johnson (hereinafter "Jeffrey"), pursuant to the parties' court-adopted separation agreement. For reasons that follow, we affirm.
 {¶ 2} Jeffery and Keri's marriage was terminated by dissolution of marriage on February 8, 2001. The trial court adopted the parties' Separation Agreement as part of its decree. The agreement provided, in pertinent part, that Jeffery would maintain the marital residence and assume and hold Keri harmless from the first mortgage. The agreement further provided that Keri would assume and hold Jeffery harmless from a $14,680 home equity loan secured by the marital residence and financed through Fifth Third Bank. Finally, the agreement provided that if the marital home was sold or foreclosed upon, Keri's indebtedness on the equity loan would be extinguished and Jeffery would forfeit any claim he might have otherwise had on the equity loan.
 {¶ 3} March 30, 2001, Jeffery filed for Chapter 7 Bankruptcy protection, listing Keri as a creditor. Jeffery listed the Fifth Third equity loan as one of his *Page 3 
debts in his bankruptcy petition, but he did not list Keri's obligation to pay the Fifth Third equity loan as an asset. As a result of the bankruptcy proceeding, Jeffery was discharged from his personal liability as to both the mortgage and the home equity loan.
 {¶ 4} In July 2004, Keri notified Jeffery that she would no longer make payments on the Fifth Third equity loan secured by the marital residence wherein Jeffery now resided. Jeffery then began to make payments on the Fifth Third equity loan to prevent foreclosure on the marital residence.
 {¶ 5} On March 17, 2006, Jeffery filed a motion to show cause with the trial court alleging that Keri should be held in contempt of court for failing to pay the Fifth Third equity loan per the court-adopted separation agreement. On January 23, 2007, a hearing was held on the motion. On May 16, 2007, the Magistrate found that Keri should be held in contempt but allowed to purge the contempt by, among other things, continuing payment on the Fifth Third equity loan and reimbursing Jeffery for all payments he made since the filing of the motion to show cause.
 {¶ 6} On May 22, 2007, Keri filed objections to the magistrate's decision, which the trial court overruled on July 2, 2007. On August 7, 2007, the trial court filed its judgment entry overruling Keri's objections. The trial court found Keri in contempt of court and ordered her to resume payments on the Fifth Third equity *Page 4 
loan and to reimburse Jeffery for all payments he made since the filing of the motion to show cause.
 {¶ 7} On August 9, 2007, Keri appealed the trial court's finding of contempt asserting three assignments of error for review.
 II. Standard of Review {¶ 8} A trial court has inherent authority to enforce its prior orders through contempt. Dozer v. Dozer (1993), 88 Ohio App.3d 296, 302,623 N.E.2d 1272. This court will not reverse a finding of contempt absent an abuse of discretion by the trial court. State ex rel. Ventrone v.Birkel (1981), 65 Ohio St.2d 10, 11, 417 N.E.2d 1249; Dozer,88 Ohio App.3d at 302. Similarly, an appellate court reviews the punishment imposed for contempt under an abuse of discretion standard as well.Montgomery v. Montgomery, 4th Dist. Nos. 03CA2923, 03CA2925,2004-Ohio-6926, ¶ 35. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court."Dozer, 88 Ohio App.3d at 302, citing Berk v. Matthews (1990),53 Ohio St.3d 161, 559 N.E.2d 1301; Buckles v. Buckles (1988),46 Ohio App.3d 102, 546 N.E.2d 950. *Page 5 
 III. Analysis ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED IN NOT FINDING A "CHOSE IN ACTION" EXISTED BETWEEN THE PARTIES AT THE TIME OF THE FILING OF THE APPELLEE'S BANKRUPTCY.
 {¶ 9} In her first assignment of error, Keri argues that Jeffery's right to compel her to "pay and save the [Appellee] harmless on the equity loan of indebtedness in favor of Fifth Third Bank in the approximate sum of $14, 680.00" pursuant to their separation agreement was a "chose in action" that should have been listed as an asset on Jeffery's bankruptcy petition. As such, Keri argues that Jeffery's right to reimbursement under the separation agreement's hold harmless provision is a part of Jeffery's bankruptcy estate; and thus, only the bankruptcy trustee can now enforce that portion of the separation agreement.
 {¶ 10} In response, Jeffery argues that a contract becomes a "chose in action" at the time of loss under the contract. Here, the loss under the separation agreement occurred after the filing of the bankruptcy petition; therefore, no "chose in action" existed when the bankruptcy petition was filed according to Jeffery. Accordingly, Jeffery argues that his right to reimbursement under the separation agreement is not a part of his bankruptcy estate and he rightfully filed the motion to show cause. We agree. *Page 6 
 {¶ 11} The parties do not dispute and the case law supports the proposition that a "chose in action" is considered property under11 U.S.C. 541 (a)(1) and part of the debtor's bankruptcy estate.DeMarco v. Ohio Decorative Products, Inc. (C.A. 6, 1994), 19 F.3d 1432,1994 WL 59009, at *5, citing Vreugdenhil v. Hoekstra (C.A. 8, 1985),773 F.2d 213, 214 (Choses in action owned by the debtor at filing of bankruptcy petition are property of the estate.). However, property rights for purposes of bankruptcy proceedings are defined by state law.Butner v. U.S. (1979), 440 U.S. 48, 54-55, 99 S.Ct. 914, 59 L.Ed.2d 136;Koch Refining v. Farmers Union Cent. Exchange, Inc. (C.A. 7, 1987),831 F.2d 1339, 1343; In re Morton (C.A. 2, 1989), 866 F.2d 561, 563. Therefore, the dispositive issue here is when a "chose in action" becomes a property right under Ohio law.
 {¶ 12} A separation agreement is a contractual agreement. Haas v.Bauer, 156 Ohio App.3d 26, 2004-Ohio-437, 804 N.E.2d 80, ¶ 16. A contractual "chose in action" is the factual circumstances the fulfillment of which give rise to a legal cause of action for breach of contract. Cincinnati v. Hafer (1892), 49 Ohio St.60, 65, 30 N.E.197;Pilkington N. Am., Inc. v. Travelers Cas. Sur. Co.,112 Ohio St.3d 482, 2006-Ohio-6551, 861 N.E.2d 121, ¶¶ 20, 88-89 Thus, a "chose in action" is more than a mere expectancy; it is an accrued property right at the time of breach or loss under the contract. Pilkington,2006-Ohio-6551, at ¶¶ 28, 89
 {¶ 13} Accordingly, whether the separation agreement in this case was a "chose in action" at the time of the bankruptcy petition filing depends upon when *Page 7 
the separation agreement was breached. The separation agreement was breached in July 2004 when Keri refused to make payments on the Fifth Third Equity loan; and thus, the chose in action also arose in July 2004. Haefer, 49 Ohio St. at 65; Pilkington, 2006-Ohio-6551, at ¶¶ 20, 28, 88-89. Jeffery's bankruptcy petition was filed March 30, 2001, almost three years prior to Keri's breach of the separation agreement. Therefore, the "hold harmless" provision under the separation agreement was not a "chose in action" at the time of the bankruptcy petition, and the trial court did not err in so finding.
 {¶ 14} Keri's first assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. II THE TRIAL COURT ERRED IN FINDING THAT IF A "CHOSE IN ACTION" DID EXIST, THAT IT WAS SUBSEQUENTLY ABANDONED BY THE BANKRUPTCY TRUSTEE.
 {¶ 15} In her second assignment of error, Keri argues that the trial court erred in finding that the "chose in action" was abandoned by the bankruptcy trustee. Jeffery argues that the trial court did not find that the chose in action was abandoned. We agree.
 {¶ 16} In support of her argument, Keri points to the following passage of the magistrate's decision: "If the `chose in action' exists simply by virtue of the Defendant's obligation to pay the debt, then there was abandonment." (May 16, 2007 JE at ¶ 10). Keri's argument lacks merit for two important reasons. First, this *Page 8 
statement must be read according to its plain language and in context of the magistrate's entire opinion. The statement's form is "if x, then y," indicating that the magistrate was assuming, agruendo, that a "chose in action" did exist. In paragraph nine, however, the magistrate explained quite clearly his finding that a "chose in action" did not exist. Accordingly, paragraph ten must be interpreted for what it is — an alternative analysis, not dispositive to the case's outcome. This is further evidenced by the fact that paragraph eleven of the decision is yet another alternative analysis.
 {¶ 17} Second, the trial court's decision and order following the objections to the magistrate's decision unequivocally states: "[t]his Court does not find based upon the evidence submitted that the trustee abandoned this potential asset." (July 2, 2007 JE at 5, fn.1). Pursuant to Civ.R. 53(D)(4)(b), the trial court may adopt, reject, or modify the magistrate's decision. The magistrate's alternative finding that the "chose in action" was abandoned was rejected by the trial court and, as such, Keri's argument is without merit.
 {¶ 18} Keri's second assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. III TRIAL COURT ERRED IN FINDING THAT THE VOLUNTEER ANALYSIS DOES NOT APPLY IN THIS CASE.
 {¶ 19} In her third assignment of error, Keri argues that the trial court erred by failing to find that Jeffery was a volunteer when he tendered payments for the *Page 9 
Fifth Third equity loan. Jeffery argues that if he had failed to pay the equity loan then the marital home where he resided would have been foreclosed. Jeffery also argues that the separation agreement's hold harmless clause was a significant distinguishing factor upon which the trial court properly relied in finding the volunteer analysis inapplicable. We agree that Jeffery was not a volunteer under the facts of this case.
 {¶ 20} "Generally speaking, the party making payment is a volunteer if, in so doing, he has no right or interest of his own to protect, and acts without obligation, moral or legal, and without being requested by anyone liable on the obligation." Aetna Cas. Sur. Co. v. Buckeye UnionCas. Co. (1952), 157 Ohio St. 385, 392-93, 105 N.E.2d 568, citing 50 American Jurisprudence 628, § 22 (Emphasis added). Furthermore, "[i]f the party has given value, he or she is not a volunteer unless the expenditure or sacrifice was made gratuitously or officiously, and not from necessity, in the protection of an interest already possessed, or in the discharge of a binding obligation." (Emphasis added). 41 Ohio Jurisprudence 3d (2007), Equity, Section 70, citing Winthrop's Adm'rs v.Huntington (1828), 3 Ohio 327; Smith v. Folsom (1909), 80 Ohio St. 218,88 N.E. 546; Knox v. Carr (1904), 69 Ohio St. 575, 70 N.E. 1125.
 {¶ 21} As an initial matter, it is appropriate to discuss Hileman v.Hileman (Aug. 18, 1989), 2nd Dist. No. CA 1228, upon which the trial court below relied in determining that the volunteer analysis did not apply. The trial court reasoned *Page 10 
that although economic distress is generally not sufficient to remove one's volunteer status, the hold harmless provision was a distinguishing factor upon which it could rely to find the volunteer doctrine inapplicable. However, Hileman is factually distinguishable from the present case.
 {¶ 22} In Hileman, the separation agreement required that the ex-husband ("Harold") make payments on a second mortgage secured by the marital home occupied by the ex-wife ("Juanita"). 2nd Dist. No. CA 1228, at *1. The agreement, like the one herein, provided that Harold hold Juanita harmless from any payment on the second mortgage. Id. Thereafter, Harold filed for bankruptcy protection but, unlike Jeffery, was not discharged from his liability on the second mortgage. Id. Harold did not make payments on the mortgage, and the bank requested that Juanita pay the loan, which she did until she sold the home. Id. Ultimately, the court awarded Juanita her payments on the second mortgage, finding that Harold was required to hold Juanita harmless under the separation agreement. Id. at *2.
 {¶ 23} In addition to Hileman being factually distinguishable, the Court in Hileman did not address the volunteer doctrine. For these reasons, relying upon Hileman for the proposition that the hold harmless provision negates one's volunteer status is not persuasive. However, we need not find Hileman persuasive to affirm the trial court's judgment if we find its judgment is correct based on an adequate and independent legal ground. Bonner v. Bonner, 3d Dist. No. 14-05-26, *Page 11 2005-Ohio-6173, ¶ 18 ("A judgment by the trial court which is correct, but for a different reason, will be affirmed on appeal as there is no prejudice to the appellant").
 {¶ 24} Six adequate and independent legal grounds require affirming the trial court's judgment in this case, three of which derive from the nature of a "volunteer" as the term is defined. First, when a person acts to protect a right or interest of their own, he/she is not a volunteer. Aetna, 157 Ohio St. at 392-93. In this case, Jeffery was residing in the marital home which was encumbered, in part, by the Fifth Third equity loan. If the Fifth Third equity was not paid, the bank would institute a foreclosure action, which would negatively impact Jeffery's equitable interest in the home.[1] This is especially true here because following the discharge in bankruptcy Jeffery refinanced the principle mortgage, reassumed legal liability, and extinguished Keri's liability as required by the separation agreement. (Jan. 23, 2007 Tr. at 51-52). Since Jeffery was acting to protect his own interest in the home, he cannot be a volunteer. Aetna, 157 Ohio St. at 392-93.
 {¶ 25} Second, when a person acts at the request of one who is liable on the obligation, he/she is not a volunteer. Id. In this case, under the terms of the separation agreement, Keri was obligated to pay the Fifth Third equity loan and *Page 12 
hold Jeffery harmless; however, in July 2004 Keri informed Jeffery that she would no longer pay the loan because she did not have the money and he refinanced the principle mortgage without her permission. (Jan. 23, 2007 Tr. at 52, 69-70). Although Keri did not `request' that Jeffery make payments on the equity loan, it is certainly true that Keri took affirmative steps to inform Jeffery that she would no longer be making the payments and thereby inferred that he would need to make payments or face foreclosure. Certainly a court in equity can consider this as a relevant factor for determining whether Jeffery should be considered a volunteer. We find this factor militates in favor of finding that Jeffery was not a volunteer.
 {¶ 26} Third, the expenditure must be gratuitous or officious for the person to be considered a volunteer. 41 Ohio Jurisprudence 3d (2007), Equity, Section 70, citing Huntington, 3 Ohio 327. Gratuitous is defined as: "1. Given or granted without return or recompense; unearned. 2. Given or received without cost or obligation; free. 3. Unnecessary or unwarranted; unjustified." THE AMERICAN HERITAGE DICTIONARY (2nd College Ed. 1985) 574. Officious is defined as: "Excessively forward in offering one's services or advice to others, esp. where the services are unneeded or unwanted * * *." Id. at 863. Under the circumstances herein, it would be disingenuous to find that Jeffery was acting officiously or gratuitously as those terms are defined. Jeffery was not acting where services were unneeded nor was he excessively forward because it was Keri who informed *Page 13 
him that she would no longer pay the loan. Jeffery did not offer to make the payments of his own accord. Therefore, Jeffery cannot be a volunteer.
 {¶ 27} Fourth, any volunteer status that Jeffery may have had extinguished when he filed the motion to show cause. It is important to note that the trial court only awarded Jeffery reimbursement for equity loan payments he made after he filed the motion to show cause. (May 16, 2007 JE at ¶ 22). At minimum, it cannot be said that Jeffery was a volunteer — that is, expended money gratuitously or officiously — following the filing of the show cause motion.
 {¶ 28} Fifth, when a court considers a show cause motion in the context of domestic relation proceedings, the court may look to equitable principles for guidance. Collins v. Collins (May 8, 1997), 3d Dist. No. 17-97-1, at *3; Ellis v. Ellis (1953), 94 Ohio App. 339,115 N.E.2d 180; Paolone v. Paolone (May 7, 1975), 7th Dist. No. 74 C. A. 109; Lehnert v. Home (Sept. 11, 1998), 6th Dist. No. WD-98-027;Musci v. Musci, 9th Dist. No. 23088, 2006-Ohio-5882, ¶ 35; Parker v.Elsass, 10th Dist. Nos. 01AP-1306, 02AP-15, 02AP-144, 2002-Ohio-3340, ¶ 39;Bean v. Bean (1983), 14 Ohio App.3d 358, 363-64, 471 N.E.2d 785. Equity's end is complete justice as expressed by the maxim "equity regards as done that which ought to be done." 41 Ohio Jurisprudence 3d (2007), Equity, Section 65; 27A. American Jurisprudence 2d (2007), Equity, Sections 1-2. Principles of equity arise when "a court of law is unable, because of the inflexibility of the rules by which it is bound, to adapt its judgment to the special circumstances of the case." *Page 14 
27A. American Jurisprudence 2d (2007), Equity, Section 2; 41 Ohio Jurisprudence 3d (2007), Equity, Section 59.
 {¶ 29} The trial court considered principles of equity in favor of Jeffery and Keri when rendering its decision. (May 16, 2007 JE at ¶¶ 19-20; Jul. 2, 2007 JE at 3, 5). Ultimately, the trial court found that equity required Keri reimburse Jeffery for payments made after he filed the motion to show cause. (May 16, 2007 JE at ¶ 20). See 41 Ohio Jurisprudence 3d (2007), Equity, Section 69 ("equity aids the vigilant, not those who slumber on their rights"). The court also considered the equity of shifting the burden of the loan to Jeffery, stating: "[t]here is also no explanation from [Keri] about how equity would allow this court to effectively shift the equity loan obligation to [Jeffery] when a Federal Court has said that [he] does not have to pay the debt." (May 16, 2007 JE at ¶ 19).
 {¶ 30} A rigid application of the volunteer doctrine in this case would be inequitable. The trial court here fashioned a rule that encourages parties to seek clarification of their rights and obligations at a time when damages are minimal, which is consistent with the maxim "equity regards as done that which ought to be done." (May 16, 2007 JE at ¶ 20); 41 Ohio Jurisprudence 3d (2007), Equity, Section 65; 27A. American Jurisprudence 2d (2007), Equity, Sections 1-2. To hold otherwise would encourage parties in similar circumstances to allow foreclosure and bring suit thereafter. Such a rule is at odds with the general principle that parties should not sleep on their rights and should mitigate damages. *Page 15 
Under the circumstances of this case, Jeffery ultimately did what was appropriate — he notified the court of the situation and sought clarification of his rights and obligations under the separation agreement. Equity should reward Jeffery for doing that which ought to be done but should not reward him for his two-year delay. The trial court's judgment here conformed to equitable principles by ordering that Jeffery be reimbursed only for the payments he made following the filing of the show cause motion.
 {¶ 31} Sixth, it is important to note that we review a contempt finding under an abuse of discretion standard. Birkel,65 Ohio St.2d at 11; Dozer, 88 Ohio App.3d at 302. This deferential standard is even more warranted in the context of contempt findings arising out of domestic relation proceedings. See Collins, Ellis, Paolone, Horne, Musci,Parker, Bean, supra. Having reviewed the facts and circumstances of this case, we cannot conclude that the trial court abused its discretion in finding Keri in contempt.
 {¶ 32} For all these reasons, Keri's third assignment of error is overruled.
 IV. Conclusion {¶ 33} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 WILLAMOWSKI and ROGERS, JJ., concur.
[1] At the time of the dissolution, the marital home was appraised at $112, 000. The first mortgage, to be paid by Jeffery, was $82, 500; the second mortgage, to be paid by Keri, was $14, 680, leaving $14, 820 of equity in the home. (Jan. 23, 2007 Tr. at 57). *Page 1