[Cite as *Porter v. Wirick*, 2016-Ohio-5773.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### DEFIANCE COUNTY


HANNAH D. PORTER,

    PLAINTIFF-APPELLANT,               CASE NO.  4-16-02

    v.

ADAM J. WIRICK,                        O P I N I O N

    DEFENDANT-APPELLEE.


Appeal from Defiance County Common Pleas Court
Juvenile Division
Trial Court No. 29928

Judgment Affirmed

Date of Decision:    September 12, 2016


APPEARANCES:

    *Mark A. Davis* for Appellant

    *Jennifer N. Brown* for Appellee

**SHAW, P.J.**

{¶1} Plaintiff-appellant, Hannah Porter ("Porter"), brings this appeal from the January 12, 2016, judgment of the Defiance County Common Pleas Court, Juvenile Division, finding Porter in contempt of court for denying defendant-appellee, Adam Wirick ("Wirick"), his "Schedule A" Christmas break holiday parenting time with the parties' child.

## I. Relevant Facts and Procedural History

{¶2} Porter and Wirick are the parents of C.P., who was born in August of 2009. On February 1, 2010, Porter filed a "Complaint for Child Support and Related Orders," which indicated that Porter and Wirick were living separate and apart. That complaint was resolved on March 31, 2010, when Porter was decreed to be the primary residential parent of C.P. and Wirick was ordered to pay child support. Wirick was also ordered to receive parenting time "as agreed upon and between the parties, not less than the Court's Schedule 'A.' " (Doc. No. 4).

{¶3} The next issue between the parties arose December 16, 2011, when Porter filed a motion seeking, *inter alia*, to modify Wirick's parenting time due to Wirick's second-shift work schedule. (Doc. No. 6).

{¶4} Also on December 16, 2011, Wirick filed a number of motions including a "Motion for Reallocation of Rights and Responsibilities." (Doc. No. 9). In addition, Wirick filed a "Motion for Contempt with Notice Hearing," requesting

that Porter show cause why she should not be found in contempt for failing to comply with the court's parenting schedule and for consistently denying Wirick parenting time. (Doc. No. 7).

{¶5} On February 8, 2012, a judgment entry was filed indicating the parties had reached a settlement and resolved all issues. The parties agreed to have joint custody of C.P. under a shared parenting plan, with Porter being listed as the residential parent. The entry indicated that "[t]he parties shall split equally all holidays as agreed. If the parties cannot agree, then the parties shall follow this Schedule A as to holidays and summer parenting time[.]" (Doc. No. 19).

{¶6} Further, the entry indicated that "[e]ffective January 25, 2012, [Wirick] shall be entitled to Schedule A parenting time and other additional time as set forth herein." (Doc. No. 19). The entry also stated, in a relevant portion, "[t]he parties shall not be entitled to interfere with the other parent's weekend or holiday parenting time, absent agreement."[1] (*Id.*)

{¶7} As related to "Christmas school break," which is the time period at issue in this appeal, Schedule A reads,

> **Mother will have Christmas school break until December 24th at 9 p.m. in the even numbered years. Father will have from December 24th at 9 p.m. until the end of the break in even numbered years. In the odd years, the time periods will reverse.**

---

[1] Although not of particular relevance to this appeal, the judgment entry set a new amount of child support against Wirick, which was modified in a February 27, 2012 *nunc pro tunc* judgment entry.

> **Breaks begin at 7 p.m. on the last day of school before the break and ends at 7 p.m. the night before school resumes.**
>
> **A holiday that falls during the * * * Christmas break shall be spent with the parent that is scheduled to have the children for that holiday as provided above. The rest of the break shall be spent with the parent who has that portion of the break for that year as provided above.**

(Doc. No. 19, Ex. B).

{¶8} Over a year after the parties began operating under the shared parenting plan, on April 5, 2013, Porter filed a motion seeking to modify the shared parenting plan due to a "change of circumstances." Porter sought, *inter alia*, an increase in child support due to rising daycare costs. (Doc. No. 21).

{¶9} The parties were sent to mediation, and ultimately reached a "full and complete agreement as to the issues pending before the court." (Doc. No. 29). A consent judgment entry was then filed on October 29, 2013, indicating that Wirick should pay certain medical bills and other specified bills. (Doc. No. 30).

{¶10} Nearly another two years then passed with the parties proceeding under the shared parenting plan when on June 17, 2015, Wirick filed an ex parte motion seeking an injunction to prevent Porter from moving C.P. out of the school district. (Doc. No. 33).

{¶11} On July 17, 2015, Wirick then filed a "Motion for Reallocation of Parental Rights and Responsibilities." (Doc. No. 34). Wirick argued that there had

been a change in circumstances and that it was in C.P.'s best interest to modify the current custody arrangement.

{¶12} Also on July 17, 2015, Wirick filed a "Motion for Contempt" seeking for Porter to show cause why she should not be held in contempt for denying Wirick visitation since June of 2015. (Doc. No. 36).

{¶13} On July 21, 2015, the trial court filed a judgment entry indicating that after a phone conference the parties had agreed to certain summer vacation parenting time dates. (Doc. No. 39).

{¶14} On August 18, 2015, Porter filed a response to Wirick's motions, stating that she had no intention of moving C.P. out of his school district. She also requested the appointment of a GAL. (Doc. No. 42). A GAL was subsequently appointed.

{¶15} On September 28, 2015, Wirick filed a motion seeking to change C.P.'s last name to Wirick. (Doc. No. 45). On October 27, 2015, Porter filed a memorandum in opposition. (Doc. No. 46).

{¶16} On December 21, 2015, Wirick filed a "Motion for Contempt and Motion for Immediate Parenting Time for Christmas 2015." This particular contempt motion is the subject leading to this appeal. In the motion, Wirick sought for Porter to show cause why she should not be held in contempt for denying Wirick his Christmas break parenting time pursuant to Schedule A. Wirick also requested

immediate parenting time to make up for lost days. (Doc. No. 50). A summons for contempt was filed December 21, 2015.

{¶17} On December 30, 2015, the trial court held a hearing on the December 21, 2015, contempt motion.[2] At the hearing both Wirick and Porter testified. The GAL also provided brief testimony. Following the testimony, the trial court found Porter in contempt of court for refusing Wirick his Christmas break court-ordered parenting time. The trial court sentenced Porter to serve 30 days in jail, with the entire sentence suspended "upon the condition of no future contempt violations by [Porter]." (Doc. No. 56). The trial court also spent a significant amount of time admonishing the parties for their poor communication related to their child.

{¶18} On January 4, 2016, Porter filed a request for findings of fact and conclusions of law.

{¶19} On January 12, 2016, the trial court filed its judgment entry on the matter summarily finding Porter in contempt of court for denying Wirick his 2015 Christmas break parenting time, and entering the sentence.

{¶20} It is from this judgment that Porter appeals, asserting the following assignments of error for our review.

---

[2] It seems from the statement of the trial court at the hearing that the July 17, 2015, contempt motion remained pending along with Wirick's motion for reallocation of parental rights and responsibilities.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT ERRED FOR FAILING TO MAKE FINDINGS OF FACT AND CONCLUSIONS OF LAW.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT ERRED BY FINDING CONTEMPT BASED ON DURESS.**

**ASSIGNMENT OF ERROR 3**
**THE TRIAL COURT ERRED IN FINDING CONTEMPT BASED UPON AMBIGUOUS LANGUAGE.**

**ASSIGNMENT OF ERROR 4**
**THE TRIAL COURT ERRED IN FINDING CONTEMPT UPON THESE FACTS.**

**ASSIGNMENT OF ERROR 5**
**THE TRIAL COURT ERRED BY IMPOSING CRIMINAL CONTEMPT.**

**{¶21}** We elect to address some of the assignments of error together, as the discussion regarding them is interrelated.

## II. First Assignment of Error

**{¶22}** In her first assignment of error, Porter argues that the trial court erred by failing to make findings of fact and conclusions of law in its judgment entry finding Porter in contempt.

**{¶23}** In this case, a contempt hearing was held and Porter was ultimately found in contempt. The trial court made its ruling on the record and proceeded immediately to sentencing. After the hearing, Porter filed a motion for written findings of fact and conclusions of law. The trial court subsequently filed a

judgment entry memorializing its contempt finding, but it did not contain specific findings of fact and conclusions of law as Porter requested. Porter now argues on appeal that the trial court erred by failing to make factual findings and legal conclusions in its entry. To support her argument, Porter cites Civ.R. 52, which states that a party can request findings of fact and conclusions of law in certain circumstances. Porter contends that she made a timely request pursuant to Civ.R. 52 and that the requirements of Civ.R. 52 are mandatory.

{¶24} Contrary to Porter's argument—which was made in a single paragraph in her brief with no supporting case authority—the Supreme Court of Ohio has *explicitly* held that, "Civ.R. 52 findings of fact and conclusions of law are unnecessary in a contempt proceeding." *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 12 (1981); *see also Machnics v. Sloe*, 11th Dist. Geauga No. 2007-G-2784, 2008-Ohio-1133, ¶ 65 (following *Birkel*); *Yarchak v. Yarchak*, 5th Dist. Stark No. 2006 CA 00259, 2007-Ohio-2619, ¶ 23 (following *Birkel*). Thus, based on the clear and unambiguous language of the Supreme Court of Ohio, we cannot find that the trial court erred in this case.[3] Accordingly, Porter's first assignment of error is overruled.

---

[3] We note that while the trial court did not make written findings of fact and conclusions of law in its judgment entry, it did make a number of factual and legal findings on the record in open court when it found Porter in contempt. While these findings in open court may not have satisfied the written requirements of Civ.R. 52 if the rule was applicable, they clearly apprised Porter of why she was being found in contempt.

### III. Second, Third, and Fourth Assignments of Error

{¶25} In Porter's second, third, and fourth assignments of error, she argues that the trial court erred by finding her in contempt. In her second assignment of error, she argues that the trial court erred by finding her in contempt based on a theory of "duress." In her third assignment of error she argues that the trial court erred in finding contempt based upon ambiguous language in its judgment entry. In her fourth assignment of error she argues that the evidence was simply insufficient to find her in contempt based upon the facts of this case.

{¶26} At the outset we note that a trial court has inherent authority to enforce its prior orders through contempt. *Johnson v. Johnson*, 3d Dist. Hancock No. 5-07-34, 2008-Ohio-514, ¶ 8, citing *Dozer v. Dozer*, 88 Ohio App.3d 296, 302 (4th Dist.1993). This Court will not reverse a finding of contempt absent an abuse of discretion by the trial court. *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11 (1981); *Johnson* at ¶ 8. Similarly, an appellate court reviews the punishment imposed for contempt under an abuse of discretion standard as well. *Johnson* at ¶ 8, citing *Montgomery v. Montgomery,* 4th Dist. Nos. 03CA2923, 03CA2925, 2004-Ohio-6926, ¶ 35. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "When applying the abuse of discretion standard, a reviewing

court is not free to merely substitute its judgment for that of the trial court." *Dozer,* 88 Ohio App.3d at 302, citing *Berk v. Matthews*, 53 Ohio St.3d 161 (1980).

*a. Contempt Hearing*

**{¶27}** At the hearing on Wirick's contempt motion, Wirick first called Porter as on cross-examination. Porter testified that she was familiar with the trial court's February 8, 2012, order and Schedule A for holiday parenting time. (Dec. 30, 2015, Tr. at 15). Porter also testified that she was aware that it was the current order for the parties to follow. (*Id.*) Porter was then presented with a copy of the court's order and she acknowledged that it said if the parties did not agree then they would follow Schedule A as to holiday parenting time. (*Id.* at 17). Porter testified that based on the dates in Schedule A, if the parties did not otherwise agree Wirick would have received Christmas break parenting time with C.P. on December 18, 2015, at 7:00 p.m. to December 24, 2015, at 9:00 p.m.

**{¶28}** Porter admitted that Wirick showed up on December 18, 2015, and stated that he was there to pick up C.P. Porter testified that she did not let Wirick take C.P. at that time because she believed it was her weekend to have C.P. so she went to check the court's order on the matter. Porter testified that she went inside, leaving Wirick outside, and then called Wirick "so [they] could agree upon something." (Tr. at 24). Porter testified that when she was communicating with Wirick over the phone she did not know Wirick was still waiting outside of her

Case No. 4-16-02

house in his car. Porter testified that she then came up with a schedule for the Christmas break, wrote it down and sent it to Wirick via text message. Porter testified that it was the first time that she had offered Wirick a proposal other than Schedule A after Wirick had already arrived for his parenting time. (*Id.*).

{¶29} The text messages between Porter and Wirick were introduced into evidence. The text messages begin at 7:48 p.m. on December 18, 2015, and continue beyond 8:02 p.m. The conversation reads:

> **[Wirick]: How late can I have him for when you pick him up Tuesday[?]**
>
> **[Porter]: I am looking at the calendar give me a second to work all of this through my head and I will send you what I came up with.**
>
> **[Porter]: I thought you were keeping him Tuesday and you didn't want Sunday night so you took Monday Tuesday.**
>
> **[Porter]: I figured we would do 5pm – 5pm.**
>
> **[*A PHOTOGRAPH OF A HANDWRITTEN NOTEBOOK PAGE WAS CONTAINED IN THE TEXT MESSAGES CONTAINING THE FOLLOWING:*]**
>
> > **Agreed on**
> >
> > **[Porter]**
> >
> > **Friday 18th**
> > **Saturday 19th**
> > **Sunday 20th**
> > **Wednesday 23rd**
> > **Thursday 24th**
> > **Friday 25th (12 noon until 6 pm)**

-11-

**Monday 28th**
**Tuesday 29th**
**Friday 1st < reg wknd**
_____

[**Wirick**]

**Monday 21st**
**Tuesday 22nd**
**Thursday 24th (2-3 hours)**
**Friday 25th (9am-12 noon) (then starts weekend at 6pm) < reg wknd**
**Saturday 26th**
**Sunday 27th**
**Wednesday 30th**
**Thursday 31st ].**

[Porter]:  These are the days I wrote down as we were talking

[Porter]:  You need to message me back soon I don't have all night

[Wirick]:  The days all look good

[Porter]:  That's what we both verbally agreed on

[Wirick]:  I pick up at 4pm.  Then when would he return is what I'm trying to figure out

[Porter]:  Well we are going to stick to 1 number so we can do 4-4?

[Wirick]:  Then I wouldn't get to see him Tuesday.  Could we do until our normal 7:30?

[Porter]:  Or do you want 5-5

[Porter]:  I would rather not how about 6

[Wirick]:  Me pick up at 4 then you pick up at 6?

> **[Porter]:  [C.P.] doesn't stay up late at my house he's in bed by 9:30-10 on the weekends**
>
> **[Porter]:  And I want to try to keep a reg schedule so it's easier to adjust him back for school**
>
> **[Porter]:  No I want to keep the same time**
>
> **[Porter]:  We both pick up at 6?**
>
> **[Wirick]:  Fine that works**
>
> **[Porter]:  Is that okay or do you want a different hour?**
>
> **[Porter]:  We can do 7 or 5 but I want to keep it one time for both pick ups.**
>
> **[Wirick]:  Then let's both do 6pm**
>
> **[Porter]:  Ok then I will have him ready for you Monday at 6 and we will go from there.  That way everyone gets to see [C.P.] for Christmas.**

(Def.'s Ex. A).

**{¶30}** When asked why she waited until December 18, 2015, when Wirick arrived to pick up C.P. pursuant to Schedule A to negotiate a different schedule, Porter testified that she was "unaware" they were following Schedule A that year. (Tr. at 25).  Porter denied seeing a purported email from approximately December 14, 2015, indicating that Wirick wished to follow Schedule A.[4]  (*Id*. at 21-22).

---

[4] No copy of any such email was included in the record discounting Porter's testimony.

{¶31} In addition, Porter testified that Wirick had not shown up for some holidays in the past and that C.P. had high anxiety and depression. (Tr. at 26). Porter also testified that she was concerned with C.P. staying with Wirick for an extended period of time, though C.P. had been with Wirick the weekend before. Porter testified that she had reported Wirick five times to Children's Services but no charges had been filed. (*Id*. at 44).

{¶32} Porter testified that despite the purported agreement that had been made between her and Wirick on December 18, 2015, after Wirick had arrived to pick up C.P., Wirick showed up again the next day, presumably in an attempt to exercise his parenting time. Porter also testified that pursuant to the "agreement" they had made, she had C.P. ready to be picked up by Wirick on Monday but Wirick never came. However, Porter testified that she did not call Wirick or attempt to send him a text message asking where he was or why he was not picking up C.P. pursuant to their "agreement." Porter testified that as of the date of the hearing, December 30, 2015, Wirick had not received any parenting time with C.P. over the Christmas break holiday.

{¶33} Wirick then testified on his own behalf. Wirick testified that according to the current trial court order he was entitled to parenting time with C.P. for C.P.'s Christmas break beginning December 18, 2015, at 7 p.m. and ending

December 24, 2015, at 9 p.m.  Wirick testified that he had contacted his attorney's office to confirm the holiday time for that year prior to December 18.

**{¶34}** Wirick testified that prior to arriving at Porter's residence on December 18, 2015, at 7 p.m. he had not received any messages or made any agreements with Porter regarding an alternative parenting schedule.  Wirick testified that when he arrived, Porter "opened the door [and] I told her I was there to pick up [C.P.] and she asked [me] why.  She was confused why I was there.  She said the last weekend was my weekend and I told her I was there for Christmas school break and then she said she would have to go in and check her court paperwork."  (Tr. at 54).

**{¶35}** Wirick testified that he waited at Porter's door for fifteen minutes before Porter returned.  Wirick testified that Porter did not even open the door again, but rather a sliding window on the door and told Wirick that his parenting time did not start until 9:00 p.m. and Porter was going to contact her lawyer to see if Wirick would get C.P. at all.  (Tr. at 54-55).  Wirick testified that he then went out to his car and called the police to see if they could help, but he was unsuccessful.

**{¶36}** Wirick testified that he stayed in his car and waited until Porter called him.  Wirick testified that Porter called and proposed a schedule to work out the parenting time over Christmas break.  Wirick testified that "I told her several times that I did not agree to what she was proposing that I wanted to do the schedule for

the entire week. I wanted to have my son for a week and at that point I was just trying to get anything I could." (Tr. at 55-56). Wirick did testify that he did not think Porter threatened him, but she did not offer any alternatives to the proposal. (*Id.* at 56-57).

{¶37} Wirick testified that he contacted his attorney's office and returned to try to pick C.P. up the next day. Wirick testified that he was unsuccessful and that he had not had C.P. at all over the Christmas holiday. Wirick testified that in the past they had tried to work out parenting time so that C.P. got to see both parents on the holidays so they had not always followed Schedule A, but there was no indication prior to his arrival on December 18, 2015, that they were going to do anything other than follow Schedule A.

{¶38} Wirick testified that C.P.'s holiday break ended January 4, 2016. Wirick testified that he was requesting the remainder of the holiday parenting time with C.P. and for Porter to be found in contempt.

{¶39} On cross-examination Wirick testified that he "was trying to get anything [he] could" when he agreed to the dates proposed by Porter via text message. (Tr. at 67). However, Wirick testified that he ultimately agreed to Porter's proposal via text. Wirick testified that he never indicated his displeasure with the plan in the text conversation itself, but he testified that he had voiced his displeasure

in the preceding phone conversation and Porter's plan was the only alternative offered. (*Id*. at 78).

{¶40} Wirick testified that he contacted his attorney prior to the holidays to confirm the dates pursuant to the order because "[h]olidays never seemed to work in [his] favor[.]" (Tr. at 73). Wirick testified that he did not show up on Monday to get C.P. pursuant to the purported agreement Porter had drawn up. On re-direct Wirick testified that since he had filed a motion for contempt, he did not think he had a right to show up for the parenting time as "agreed upon" because he was maintaining that he should have received Schedule A time.

{¶41} The GAL, Katrina Kight, then provided brief testimony. Kight testified that she had not made a recommendation regarding holiday parenting time prior to the holiday and that she had not received any alternative schedule from the parties prior to December 18, 2015.

{¶42} Porter then took the stand on direct examination. Porter testified that with holiday schedules in the past they did it "kind of * * * last minute." (Tr. at 106). Porter testified that they usually worked out Christmas day so C.P. could be with both sides of the family for part of the day.[5] Porter testified that it is more

---

[5] Porter seemed to be referring simply to Christmas day rather than for the entire holiday break here, so it is not entirely clear whether her testimony related to holiday schedules was only for the "holiday" itself or for the entire break period surrounding it.

difficult with C.P. having anxiety and depression. Porter testified that C.P. is in therapy.

{¶43} Porter testified that she felt the contempt motion was based on a misunderstanding or "maybe [Wirick is] trying to get back at me for something." (Tr. at 107). Porter testified that she thought she had an agreement with Wirick and that they would exchange C.P. every couple of days to keep his anxiety low. At the conclusion of Porter's testimony, the parties made their closing arguments. The GAL made no recommendation with regard to contempt. The GAL did note that she was concerned that the child had missed out on holiday time with both sides of the family and that he was the victim of the misunderstanding and stubbornness of the parents. (*Id.* at 116).

{¶44} The trial court then made the following ruling on the record.

**Reviewing the evidence and testimony before me it is abundantly clear that the Plaintiff is in contempt of court for violating the court's order and not following Schedule A with regard to the Christmas visitation that was to occur on December 18th. Although an agreement was reached I believe between the parties, an agreement, to use [Porter's counsel's] words, should be freely and fairly negotiated and when a child is being held hostage essentially by someone being denied their visitation at the time it is to occur, that eliminates that free and fair negotiation and you cannot expect an agreement to have legal validity that's negotiated after the fact. For those reasons, I do find the Plaintiff to be in contempt of court.**

(Tr. at 117).

{¶45} The trial court then proceeded to sentencing, sentencing Porter to 30 days in jail with all 30 days suspended on the condition that Porter have no further contempt violations. Following sentencing, the trial court spent a significant amount of time directly admonishing the parties and informing them that they had to do what was best for C.P. The trial court stated that it was possible the parties' disputes were contributing to C.P.'s anxiety.

> **He's not a dog. He's not a piece of property for you two to fight over and that's not going to be allowed. These are not win lose cases. Nobody won here today and nobody lost here today. We're simply going to rectify this situation and right this ship and move you into the future, but I'm going to not only encourage, but I'm going to direct both of you to start thinking about [C.P.] first and foremost.**

(Tr. at 125-126). The trial court's lengthy remarks included the court stating that agreements needed to be worked out beforehand, not once Wirick arrived in an attempt to exercise his parenting time.

### b. Second Assignment of Error

{¶46} In her second assignment of error Porter argues that the trial court erred by basing its finding of contempt on "duress." Porter contends that in order to void an agreement based on duress specific legal standards have to be met.

{¶47} In *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 246 (1990), the Supreme Court of Ohio listed the following elements common to situations where duress has been found to exist:

**"(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) *that said circumstances were the result of coercive acts of the opposite party. * * * The assertion of duress must be proven to have been the result of the defendant's conduct and not by the plaintiff's necessities.*"**

(Emphasis in original). *Blodgett* at 246 quoting *Urban Plumbing & Heating Co. v. United States*, 408 F.2d 382, 389-390 (U.S.Ct. of Claims 1969). The Supreme Court of Ohio continued in *Boldgett* by stating, "[t]o avoid a contract on the basis of duress, a party must prove coercion by the other party to the contract. It is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party." *Blodgett* at 246. Porter claims that a finding of duress in this case was not supported upon these facts.

**{¶48}** Most notably, the trial court never stated it was finding Porter in contempt based on a finding of legal duress. In fact, the trial court further explained its contempt finding when it was admonishing the parties after it had already sentenced Porter, stating simply and specifically,

**[T]here was no agreement that was reached in this case prior to December 18th so when [Wirick] showed up, he was entitled to the child because the rule says on December 18th at seven o'clock or whenever the appointed time was if you haven't reached an agreement prior to that time that's the default schedule and that's why I'm finding you in contempt. You have to follow that schedule. You can't try to figure out ways to not follow the schedule and I understand you're the custodial parent, but that doesn't mean that you get to dictate when and where the child goes and those kinds of things.**

(Tr. at 126).

**{¶49}** Although Porter attempts to narrow the trial court's ruling to one that was completely based upon legal duress, the trial court was clearly concerned with the fact that no agreement was made prior to Wirick arriving for his court-appointed time and Porter made no attempt to follow the schedule at that time. The court did not ever use the word duress when making its finding. As the court's ruling is supported by the evidence, we cannot find that the trial court even found "duress" in this case such that we need to review it as an assignment of error. However, to any extent that the assignment raises a reviewable issue separate from simply whether the contempt finding was supported by the evidence, we find no merit to it, and Porter's second assignment of error is overruled.

### c. Third Assignment of Error

**{¶50}** In Porter's third assignment of error, she argues that the trial court's finding of contempt was based on ambiguous language. Porter argues that the trial court's February 8, 2012, judgment entry stated that the parties shall "split all holidays as agreed." Porter states that is exactly what happened, that the parties agreed to split the holiday and thus there was no contempt. Porter states that the order did not indicate *when* the parties should enter into an agreement, making it ambiguous.

**{¶51}** Despite Porter's argument, the trial court's order also states that "[i]f the parties cannot agree, then the parties shall follow this Schedule A as to holidays." It would seem based on a plain reading of these documents that the schedule itself creates a natural deadline. However, at the very least we cannot find that the trial court abused its discretion in this case finding that Porter was in contempt for waiting until Wirick arrived for parenting time to attempt to "negotiate" an alternative schedule. Therefore, Porter's third assignment of error is overruled.

### d. Fourth Assignment of Error

**{¶52}** In Porter's fourth assignment of error, Porter argues that the trial court erred in finding her in contempt based upon the facts of this case. Porter argues that the parties reached an agreement, that they had reached similar accommodations in the past, and that the trial court noted that it found both parties credible. Porter argues that based on this, she should not have been found in contempt.

**{¶53}** After reviewing the record we cannot find that the trial court abused its discretion finding Porter in contempt. There was a clearly established order for holiday parenting time, which Porter was in possession of as she went to get it on December 18, 2015, when Wirick showed up at her house. Porter made Wirick wait outside and then forced him to renegotiate the holiday parenting time rather than allowing Wirick to exercise his parenting time. Wirick testified that he agreed to Porter's schedule at the time because he did not feel as though he had any other

option. Moreover, we note that the trial court had been dealing with these parties for a number of years, and was in a much better position than this Court to assess whether contempt was warranted. On the basis of these facts, we cannot find that the trial court abused its discretion. Therefore, Porter's fourth assignment of error is overruled.

## IV. Fifth Assignment of Error

{¶54} In Porter's fifth assignment of error, she argues that the trial court erred by imposing "criminal" contempt. Porter argues that because the trial court imposed a 30 day jail sentence, the contempt was criminal rather than civil and thus the court had to make its contempt finding beyond a reasonable doubt. Specifically, Porter contends that the contempt is criminal because she was not given an opportunity to purge the contempt.

{¶55} "Contempt is classified as civil or criminal depending upon the character and purpose of the punishment." *In re A.A.J.*, 12th Dist. Warren No. CA2014-10-130, 2015-Ohio-2222, ¶¶ 43, citing *In re W.F.,* 12th Dist. Fayette No. CA2010–10–029, 2011-Ohio-3012, ¶ 12. Criminal contempt sanctions are punitive in nature, and such sanctions are designed to punish past affronts to the court and to vindicate the authority of the law and the court. *Id.* citing *W.F.* Criminal contempt is usually characterized by an unconditional sentence, and the contemnor is not afforded an opportunity to purge himself or herself of the contempt. *Id.*; *Id.*

Conversely, civil contempt renders punishment that is remedial or coercive and for the benefit of the complainant, and sentences are conditional. *Whitman v. Whitman*, 3d Dist. Hancock No. 5-11-20, 2012-Ohio-405, ¶ 54, citing *Carroll v. Detty*, 113 Ohio App.3d 708, 712 (4th Dist.1996). A contemnor is said to " 'carry the keys of his prison in his own pocket' " because the contemnor must be afforded the opportunity to purge his civil contempt. *Whitman*, quoting *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253 (1980).

{¶56} "However, when there is no way to purge past violations of a court order, failing to provide a purge mechanism is not an abuse of discretion." *In re A.A.J.,* 2015-Ohio-2222, ¶ 44, citing *In re Howard,* 12th Dist. Butler Nos. CA2001–11–264, CA2001–12–281, and CA2001–12–282, 2002-Ohio-5451, ¶ 17. By suspending the sentence imposed upon a party found in contempt for a past violation, " 'the court effectively allows for purging of the contempt.' " *In re A.A.J.*, 12th Dist. Warren No. CA2014-10-130, 2015-Ohio-2222, ¶¶ 43-44, quoting *Caldwell v. Caldwell,* 4th Dist. Gallia No. 02CA17, 2003-Ohio-1752, ¶ 8.

{¶57} In this case Porter was found in contempt of court and sentenced to thirty days in jail. All thirty days were suspended on the condition that Porter have no future contempt violations.[6] Thus while the court did not give an explicit purging

---

[6] Arguably the trial court even carefully worded its judgment to say "future" violations as Porter may have had a past contempt still pending.

-24-

mechanism in its order, it did suspend the sentence, effectively allowing for a purge as indicated in *In re A.A.J* and *Caldwell*, *supra*.

**{¶58}** Moreover, nowhere in this record is there any indication that the trial court wanted to make the contempt criminal rather than civil. The fact that the punishment is meant to encourage the parties to be more civil and to communicate for the good of C.P. indicates that the contempt is remedial and coercive. If the trial court wished the contempt to be merely punitive—and thus criminal—the trial court likely would not have suspended the sentence.

**{¶59}** Thus under the facts and circumstances of this case we do not find, as Porter suggests, that the trial court found her in criminal contempt rather than civil contempt. Therefore her fifth assignment of error is overruled.

### V. Conclusion

**{¶60}** Having found no error prejudicial to Porter in the particulars assigned, her assignments of error are overruled and the January 12, 2016, judgment of the Defiance County Common Pleas Court, Juvenile Division, is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, J., concurs.**

**/jlr**

**ROGERS, J., Dissenting.**

{¶61} I must respectfully dissent from the conclusion of the majority on Assignment IV. It is repeatedly stated that "if the parties cannot agree," then they would follow Schedule A. By the clear and unambiguous language, an attempt to agree is a condition precedent to Schedule A becoming effective.

{¶62} Wirick simply appeared at Porter's door without any prior communication or attempt to agree on a visitation schedule. He then complains that he was denied any visitation whatsoever during the Christmas season, but by his own testimony he declined to exercise the very visitation times and days he could have had pursuant to an agreement the parties reached together. He chose instead to file his motion for contempt, perhaps to gain leverage in future custody/visitation contests.

{¶63} Finding that the trial court erred in its finding of contempt on the facts before it, I would reverse the judgment of the trial court. My resolution of Assignment IV would render the other assignments of error moot.